Leo C. ANGEL, Plaintiff-Appellant,

v.

CITY OF FAIRFIELD, TEXAS, and W.F. Daniel, Defendants-Appellees.

No. 85–1276.

United States Court of Appeals, Fifth Circuit.

July 11, 1986.

Donald W. Hill, Dallas, Tex., for plaintiff-appellant.

Herbert S. Bristow, W.C. Haley, Waco, Tex., for defendants-appellees.

Before JOLLY, and HILL, Circuit Judges, and EDWIN F. HUNTER, Jr.,* District Judge.

E. GRADY JOLLY, Circuit Judge:

The City of Fairfield played the devil with Angel, or so it is alleged. Leo Angel, an unsuccessful candidate for mayor in Fairfield, Texas, appeals the dismissal of his lawsuit in which he alleges that the city and others violated his constitutional rights because, in the election in which he was an unsuccessful candidate, votes of nonresidents were improperly counted, and properly qualified voters were denied the right to vote. The district court dismissed the complaint under Rule 12(b) of the Federal Rules of Civil Procedure, holding that under the principles of *res judicata*, the earlier Texas state court action that rejected his state election challenge precluded a section 1983 claim attacking the same practices. We affirm the district court, but on different grounds; we hold that Angel's complaint does not state a cause of action under section 1983.

I

On April 7, 1984, the City of Fairfield held its mayoral election in which William F. Daniel, the incumbent, defeated Angel by 199 votes to 182. Unhappy with the result and with the way the election was conducted, Angel first contested the election in Texas state court, alleging:

    1. The election judge allowed two persons to vote without signing a tally sheet.

* District Judge of the Western District of Louisiana, sitting by designation.

2. Election officials allowed eight non-residents to vote.

3. The election judge allowed one person to vote even though some unspecified person told the election judge that the potential voter was a nonresident.

4. Officials allowed about six voters to vote after the polls had closed.

5. The election judge removed votes from the ballot box before the polls closed and took them into a room where candidate Daniel was present.

6. The election judge first announced that 334 votes had been cast, then after no more than 6 more votes were allowed, the election judge announced that 371 votes had been cast.

7. Examination of the poll list shows that names have been erased.

As required by Texas law, Angel contended in the state proceeding that the will of the people could not be determined from the election because of the irregularities and fraud in the election process. In his state action, Angel did not point to any constitutional violations, nor did he seek any relief beyond voiding the April 7 election and holding another election. The state court, after hearing evidence and arguments, denied Angel relief. Angel did not appeal.

He then brought this section 1983 action in federal district court, seeking to have the election declared unconstitutional and void. He prayed for an injunction against the said-to-be faulty operation of the election and asked for damages and attorney's fees.

In his complaint, Angel seems to allege that the following acts constituted patent unfairness that altered the outcome of the election: (1) Fairfield appointed election officials who were partial to his opponent, the incumbent; (2) such acts were part of a custom and practice of appointing election judges tied to incumbents; (3) the city failed to instruct its election officials prop-

erly, and this failure was a custom or practice; (4) as a matter of policy and practice, the City of Fairfield allowed nonresidents to vote and failed to establish a procedure to determine the residence of voters; and (5) by virtue of the city's policy and practice, qualified voters were denied the right to vote.

Without discussing whether Angel had stated a claim under section 1983, the district court found that the state election contest was *res judicata* as to the federal claim, and dismissed the complaint.

Angel contends on appeal that he and other qualified voters were denied the fundamental right to vote, arguing that their votes were unconstitutionally diluted by the votes of nonresidents of Fairfield and other unqualified voters. Fairfield responds that Angel has not stated a claim because he does not allege that he was denied the right to vote. Furthermore, Fairfield argues that the Constitution generally reserves to the states the authority over their election procedures, a constitutional rule that should be respected under the facts presented here.

## II

Thus, the question presented to us, as we decipher it, is whether Angel's allegations that Fairfield failed to train its election officials properly and that Fairfield failed to establish a procedure to determine the residence of potential voters state a cause of action under section 1983. As a general proposition, a section 1983 claim requires the plaintiff to show (1) conduct committed under color of state law, and that (2) the conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. *Augustine v. Doe*, 740 F.2d 322, 324 (5th Cir.1984); 42 U.S.C. § 1983. In an action against a municipality such as Fairfield,[1] the plaintiff must show that the conduct was pursuant to a custom, policy or prac-

---

1. Since Daniel was sued in his capacity as Mayor of Fairfield, he cannot be held liable unless Fairfield is liable, and any recovery would have to come from public funds. *Owen v. City of*

*Independence, Mo.*, 445 U.S. 622, 638, n. 18, 100 S.Ct. 1398, 1409 n. 18, 63 L.Ed.2d 673, *reh'g denied*, 446 U.S. 993, 100 S.Ct. 2979, 64 L.Ed.2d 850 (1980).

tice that is somehow attributable to municipal decision-makers, and that an *affirmative* link exists between that policy and the alleged constitutional violation. *City of Oklahoma City v. Tuttle,* —— U.S. ——, 105 S.Ct. 2427, 2435–36, 85 L.Ed.2d 791 *reh'g denied,* —— U.S. ——, 106 S.Ct. 16, 87 L.Ed.2d 695 (1985).

When ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the district court should take "the material allegations of the complaint ... as admitted," and it should not dismiss the complaint unless it appears that the plaintiff could "prove no set of facts in support of his claim which would entitle him to relief." *Jenkins v. McKeithen,* 395 U.S. 411, 422, 89 S.Ct. 1843, 1849, 23 L.Ed.2d 404 (1969) (citation omitted) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). A section 1983 complaint must, however, state specific facts, not simply legal and constitutional conclusions. *Hale v. Harney,* 786 F.2d 688, 690 (5th Cir.1986); *Morrison v. City of Baton Rouge,* 761 F.2d 242, 244 (5th Cir.1985).

### III

#### A.

The complaint before us, as we have indicated, is not a model of clarity. Nevertheless, when liberally construed, it might be seen to present two theories of recovery: first, the City of Fairfield somehow denied Angel and other qualified voters equal protection of the laws when it failed to train election officials, who were closely tied to the incumbents who appointed them; and, second, the City of Fairfield denied all residents of Fairfield equal protection of the laws by diluting their respective votes when it failed to prevent the voting of nonresidents.[2]

#### B.

■ We first deal with Angel's allegation that Fairfield's failure to train its partisan election officials denied him equal protection. The Supreme Court has recently cast considerable doubt on whether an allegation of "failure to train" sufficiently states the policy that is required to hold a municipality liable under section 1983. *Tuttle,* 105 S.Ct. at 2436, n. 7. Indeed, our court had already expressed such doubt. *Languirand v. Hayden,* 717 F.2d 220, 223–28 (5th Cir.1983), *cert. denied,* 467 U.S. 1215, 104 S.Ct. 2656, 81 L.Ed.2d 363 (1984). Irrespective of *Tuttle,* however, Angel's complaint fails to state a claim upon which relief can be granted. Angel does not identify any constitutional violation resulting from the failure to train. *Id.* 105 S.Ct. at 2436.

In *Tuttle,* the Supreme Court enunciated the obvious: the policy complained of must have somehow caused the constitutional injury. *Id.* Here, Angel has failed to allege how the failure to train resulted in the denial of his right to equal protection of the laws. We therefore hold that to the extent that the complaint rests on failure to train, it fails to state a cause of action.

#### C.

Angel's complaint that the City of Fairfield denied him equal protection of the laws through policies that resulted in votes of nonresidents diluting his vote also fails to state a claim for which relief can be granted.[3] Angel relies on *Reynolds.*

The broad dicta in *Reynolds v. Sims,* 377 U.S. 533, 544–62, 84 S.Ct. 1362, 1372–82, 12 L.Ed.2d 506 (1964), identified the right to vote in state elections as a fundamental right. Later Supreme Court cases have

---

**2.** Any procedural due process claim is foreclosed by the fact that Texas provides a valid remedy after the election to redress the alleged infringement of these rights—the election challenge—and by the fact that it would not be feasible to provide a remedy before or during the election. *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981).

**3.** A complaint of vote dilution presents an equal protection claim because the fundamental right is the right to vote equally with others in the jurisdiction. *Dunn v. Blumstein,* 405 U.S. 330, 336, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972).

considerably qualified *Reynolds'* statements. The Supreme Court has recently noted, "The Constitution 'does not confer the right of suffrage on any one,' and ... 'the right to vote, *per se*, is not a constitutionally protected right.'" *Rodriguez v. Popular Democratic Party*, 457 U.S. 1, 9, 102 S.Ct. 2194, 2197, 72 L.Ed.2d 628 (1982) (citations omitted). Instead, once a state or locality provides for election of its representatives, "a citizen has a constitutionally protected right to participate in elections on an equal basis *with other citizens in the jurisdiction.*" *Dunn v. Blumstein*, 405 U.S. 330, 336, 92 S.Ct. 995, 1000, 31 L.Ed.2d 274 (1972) (emphasis added). *See also City of Mobile v. Bolden*, 446 U.S. 55, 77, 100 S.Ct. 1490, 1505, 64 L.Ed.2d 47 (1980).

For instance, in *Reynolds*, a legislative reapportionment case, the archaic apportionment of state legislative districts that Alabama had retained for sixty years diluted the votes of citizens of the more populous counties, because they could not elect the number of representatives to which their proportion of the state's population entitled them. 377 U.S. at 544–62, 84 S.Ct. at 1372–82. The State of Alabama therefore denied citizens of its more populous counties equal protection of the laws because the malapportionment discriminated against them as compared to other state citizens of less populous counties.

 In contrast to *Reynolds*, Angel does not allege or suggest that any particular group of Fairfield residents were treated differently from any other group of Fairfield residents. When nonresidents were allowed to vote in Fairfield elections, all of the qualified voters were treated alike, and their respective votes were diluted to the same extent. As the Supreme Court teaches in *Dunn*, the equal protection clause gives a citizen "a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." 405 U.S. at 336, 92 S.Ct. at 1000. Because Angel does not allege discrimination between citizens in the same jurisdic-

tion, he fails to state a claim that he was denied equal protection of the laws by allowing nonresidents to vote.

## IV

Finally, we remind the parties before us, and other potential litigants as well, that the federal courts have "returned litigants with garden variety election challenges to the state tribunals and procedures established for the specific purpose of ensuring that the declared winner of an election has actually received the highest number of legally cast ballots," *Duncan v. Poythress*, 657 F.2d 691, 701 (5th Cir.1981), *cert. dismissed*, 459 U.S. 1012, 103 S.Ct. 368, 74 L.Ed.2d 504 (1982), and that section 1983 "did not authorize federal courts to be state election monitors." *Gamza v. Aguirre*, 619 F.2d 449, 454, *reh'g denied*, 625 F.2d 1016 (5th Cir.1980). This case, though promenading in disheveled constitutional dress, is nothing more than a "garden variety" election challenge that should have ended in the state courts where it began.

In concluding, we hold that from the allegations of the complaint, Angel could prove no set of facts that would state a claim of an equal protection violation. This is true because no connection is shown between Fairfield's failure to train and a constitutional violation, and because Angel received the same protection of the laws as all the other residents of Fairfield. We therefore affirm the dismissal of his complaint as failing to state a claim under section 1983.[4]

## V

Because Angel's complaint failed to state a constitutional violation, the judgment of the district court is

AFFIRMED.

4. Angel has not alleged any federal statutory violation.