**Rudy M. GROOM, Plaintiff,**

v.

**Kenton R. FICKES, Jr., et al., Defendants.**

**Civil Action No. H–96–1736.**

United States District Court, S.D. Texas, Houston Division.

Jan. 2, 1997.

Bryan W. Scott, Houston, TX, for Plaintiff.

Rodney Paul Geer, Office of Atty. Gen., Austin, TX, for Defendants.

### MEMORANDUM AND ORDER GRANTING MOTION TO DISMISS

HOYT, District Judge.

## I. INTRODUCTION

The plaintiff, Rudy M. Groom, commenced this action under 42 U.S.C. section 1983,[1] alleging that the defendants Kenton R. Fickes, Jr.,[2] a state-appointed receiver, Michael E. Clark, an assistant United States attorney, and Ellen Rodriguez and Thomas E. Artru, special agents with the Internal Revenue Service's ("IRS") Criminal Investigation Division, conspired to violate his constitutional rights by subjecting him to a malicious prosecution. The plaintiff also sues for intentional infliction of emotional harm, a common-law claim.

Pending before the Court are Rule 12(b)(6) motions to dismiss for defendants Clark, Artru, and Rodriguez, for failure to state a claim upon which relief can be granted. The Court, having reviewed the motions, the record, and the applicable law, is of the opinion that the motions to dismiss should be granted.

## II. STATEMENT OF FACTS AND PROCEDURAL HISTORY

On July 23, 1993, a grand jury returned a five-count indictment against the plaintiff, charging him with four counts of bank fraud and one count of tax fraud. The indictment stemmed from the plaintiff's allegedly dubious business dealings with Universal Savings Association ("Universal"), a failed savings and loan institution.

The facts reveal that in 1985, the plaintiff and a business associate, George T. Bass, ("lessors") entered into a five-year lease agreement with Universal to lease to Universal a 1973 King Air aircraft. Universal, in turn, loaned the lessors $400,000 so that they could purchase and refurbish the aircraft. Other parts of the agreement required Universal to pay all of the aircraft-related expenses and maintenance costs, as well as an hourly usage rate. However, Universal had an option to purchase the aircraft at a price equal to the unpaid note balance. It is undisputed that Universal came into possession of the aircraft and, thereafter, treated the aircraft as its own. Because of this conduct, the plaintiff alleges that he and Bass believed

---

1. 42 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State, [deprives] ... any citizen of the United States or other person within the jurisdiction thereof ... of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured ..." in a suit for damages.

2. On July 30, 1996, this Court granted Fickes's Rule 12(b)(6) motion to dismiss. This memorandum will, therefore, discuss the plaintiff's claims as they pertain to Clark, Artru, and Rodriguez.

that Universal had exercised the purchase option on the aircraft, pursuant to the lease agreement.

The indictment, however, alleged that the aircraft was intended to be used exclusively by the officers of Universal as a company or personal aircraft, and that Universal's failure to appropriately report the lessors' loan to government regulators, as well as the plaintiff's role in this scheme, was illegal. As evidence of the scheme, the government points to a letter from the plaintiff to Universal, dated July 6, 1987, "den[ying] any liability on the note," because, according to the plaintiff, he was simply a "nominee" owner who had executed the loan on Universal's behalf. Now, however, the plaintiff emphatically insists that he was the true owner of the aircraft at all relevant times.[3]

Universal was, subsequently, taken into receivership and Artru, Rodriguez and other agents with the IRS's Criminal Investigation Division ("CID") were assigned to investigate the activities of Universal and its subsidiaries. The plaintiff alleges that it was then that Fickes, Artru and Rodriguez "undertook to make a criminal case" against him and the officers and directors of Universal and its subsidiaries. He also alleges that Clark participated in the ensuing investigation by directing the IRS agents, including Rodriguez, to interview and secure information from the plaintiff.

In July of 1986, RMG Investments, Inc. ("RMG"), a company in which the plaintiff had a majority ownership interest (see *supra* footnote 3), disposed of its major asset, a Cessna aircraft. At this point, RMG had no assets and significant liabilities, which in the plaintiff's opinion, rendered his RMG stock worthless. The plaintiff took a $25,785 loss on his 1986 individual tax return by treating the stock as worthless, generating a long-term capital loss deduction. The plaintiff claims that he was simply following IRS regulations, which among other things, require that worthless securities be treated as a sale of stock. However, the plaintiff's financial statement contained in Universal's records, dated August 1, 1987, indicated that the plaintiff still owned the RMG stock and that it had a value of $15,000.

As a result of this and other evidence presented to the grand jury, the plaintiff was indicted. During his criminal trial in 1994, this Court overruled the plaintiff's motion for judgement of acquittal under Federal Rule of Civil Procedure 29 on the four bank fraud charges, finding that the prosecutors had produced sufficient evidence to sustain these charges. However, this Court dismissed the fifth count of the indictment concerning tax fraud only because it was subsumed by the other charges. A jury subsequently acquitted the plaintiff of the remaining charges.

On May 30, 1996, the plaintiff initiated this section 1983 action against the defendants. The plaintiff amended his original complaint after Clark, Artru, and Rodriguez initially moved to dismiss his claims for failure to state a claim. Nevertheless, the defendants' motions to dismiss are not compromised by the amended pleadings.

### III. CONTENTIONS OF THE PARTIES

The plaintiff alleges that Clark, Artru, and Rodriguez conspired to violate his Fourth, Fifth and Fourteenth Amendment rights to be free from an unreasonable search and

---

**3.** The Court's analysis and review of this suit's factual background has proven to be a formidable task because of the numerous conflicting statements that the plaintiff has made prior to and throughout this suit. In fact, the plaintiff's willingness to consistently recast his statements and conduct in a different light has engendered a convoluted factual record. For example, the plaintiff claims that Universal instructed him to transfer the aircraft's title to RMG Investments, Inc. ("RMG"), after allegedly insisting on being removed from the note. The plaintiff had a 75% ownership interest in RMG and Herbert A. Heitman, Jr. owned the remaining 25%. The plaintiff then typed a stock certificate for all of RMG's outstanding stock—1,000 shares-in Universal's name. Thereafter in a letter to Universal, the plaintiff intimated that the sale of the King Air aircraft to RMG and the simultaneous transfer of RMG stock to Universal was in full satisfaction of the note. The plaintiff now argues that this stock transfer was never executed (despite his earlier statements to the contrary) because he never delivered the stock certificate to Universal and Heitman never assigned or executed his ownership interest. The record is replete with similar contradictory statements by the plaintiff. All of this merely points up the fact that the plaintiff wants to have this circumstance both, as owner and then as nonowner.

seizure and against self incrimination. Also, the plaintiff asserts that the defendants engaged in the conduct for the sole purpose of intentionally inflicting emotional harm upon him.

Clark contends that both absolute and qualified prosecutorial immunity shield him from any liability arising from the plaintiff's allegations. Artru and Rodriguez contend that qualified immunity bars any liability for their conduct. This is so, the defendants claim, because the plaintiff has not articulated a violation of any *clearly established* constitutional rights. This Court will consider the defendants' affirmative defenses in turn.

## IV. AUTHORITIES AND DISCUSSION

### A. Standard of Review on a Rule 12(b)(6) Motion

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a complaint when it "fails to state a claim upon which relief can be granted." In reviewing a Rule 12(b)(6) motion, the court must accept as true the factual allegations in the complaint and view them in the light most favorable to the plaintiff. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Colle v. Brazos County,* 981 F.2d 237, 243 (5th Cir.1993). Thus, a complaint must state specific facts, not simply legal and constitutional conclusions in order to survive a motion to dismiss. *Angel v. City of Fairfield,* 793 F.2d 737, 739 (5th Cir.1986).

A court should not grant a Rule 12(b)(6) motion simply because it disbelieves the complainant's factual allegations or considers recovery remote or unlikely. *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686; *Columbia Natural Resources, Inc. v. Tatum,* 58 F.3d 1101, 1109 (6th Cir.1995). A motion to dismiss, however, shall be granted if it appears beyond doubt that the plaintiff can prove no set of facts that will entitle him to relief, *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957), or there is simply no legal theory entitling the plaintiff to relief, *Walker v. South Central Bell Tel. Co.,* 904 F.2d 275, 277 (5th Cir.1990).

### B. The Doctrines of Prosecutorial Immunity: Absolute and Qualified

#### 1. Absolute Immunity

■ In his motion to dismiss, Clark argues that he is absolutely immune from the plaintiff's malicious prosecution claim to the extent that he was functioning as an advocate. The Court agrees.

■ Prosecutors are absolutely immune from liability arising out of their initiation and presentation of the government's case. *Imbler v. Pachtman,* 424 U.S. 409, 427, 96 S.Ct. 984, 993, 47 L.Ed.2d 128 (1976). Absolute immunity encompasses a prosecutor's activities as an advocate, i.e., "activities intimately associated with the judicial phase of the criminal process." *Id.* at 430, 96 S.Ct. at 995. Such immunity is warranted "[e]ven where the prosecutor knowingly used perjured testimony, deliberately withheld exculpatory information, or failed to make full disclosure of all facts." *Henzel v. Gerstein,* 608 F.2d 654, 657 (5th Cir.1979).

■ Absolute immunity shelters prosecutors from liability even when they act "maliciously, wantonly or negligently." *Morrison v. City of Baton Rouge,* 761 F.2d 242, 248 (5th Cir.1985). "One of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit." *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).

■ The broad application of absolute immunity, therefore, shields a prosecutor from any liability arising from his conduct as an advocate. *Hand v. Gary,* 838 F.2d 1420, 1426 (5th Cir.1988) (state actors, *other than prosecutors,* may be liable for damages for "bad-faith prosecution"). Thus, Clark enjoys absolute immunity even if he maliciously singled out the plaintiff for prosecution. *Hunter v. City of Beaumont,* 867 F.Supp., 496, 498 (E.D.Tex.1994). Also, his role in attempting to negotiate a plea agreement with the plaintiff enjoys absolute immunity.[4] *Pfeiffer v.*

---

4. In his amended complaint, the plaintiff states that he was interrogated by Clark, Artru, and

Jimmy Sledge, a representative of the U.S. Justice Department, for approximately 40 hours

*Hartford Fire Ins. Co.,* 929 F.2d 1484, 1492 (10th Cir.1991) (plea-bargaining activity is absolutely immune because it is intimately associated with the judicial process); *Taylor v. Kavanagh,* 640 F.2d 450, 453 (2d Cir.1981).

## 2. Qualified Immunity

■ The plaintiff also contends that, in an investigative capacity, Clark is entitled only to the more general qualified immunity. Thus, he argues that Clark does not enjoy the protection of qualified immunity "because any reasonable person would have known that [criminally prosecuting] the [p]laintiff on these charges violated his Fourth Amendment right to be free from prosecution without probable cause." The Court agrees that Clark is entitled only to qualified immunity in the role of an investigator, but rejects the latter argument.

■ In reviewing a prosecutor's conduct, courts employ a "functional approach," considering the function being performed, rather than the identity of the actor performing the act. *Forrester v. White,* 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988). Hence, a prosecutor receives "qualified immunity" for administrative or investigative functions that are not an integral part of the judicial process. *Rykers v. Alford,* 832 F.2d 895, 897 (5th Cir.1987). Nevertheless, qualified immunity shields prosecutors and other government officials from liability for money damages when performing discretionary functions "if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982).

■ In determining whether Clark is entitled to qualified immunity, in performing discretionary functions, a court applies the following three-part test and determines whether: (1) the plaintiff asserted the violation of a constitutional right; (2) this constitutional right was clearly established at the time the incident occurred; and, (3) a reasonable official would have known that his actions violated that right. *Cleavinger v. Saxner,* 474 U.S. 193, 207, 106 S.Ct. 496, 503–04, 88 L.Ed.2d 507 (1985); *Harlow,* 457 U.S. at 818, 102 S.Ct. at 2738.

In the ease at bar, the plaintiff argues that Clark functioned in a law-enforcement capacity when he: 1) directed Rodriguez and other (unnamed) CID agents to question and investigate the plaintiff; 2) compiled a list of names, including the plaintiff's, which were to be investigated; 3) received two exhibits from Artru relating to a "separate matter" [5]; and, 4) made several derogatory remarks about the plaintiff and, told the jury (during another *unrelated* legal proceeding) that he would "get" the plaintiff.

Assuming, *arguendo,* that these allegations are true, the Court holds that such conduct was both prosecutorial and investigative, in nature. However, to the extent that Clark's activities were investigative, the inquiry is whether the activities deprived the plaintiff of a right secured by the constitution and its laws. *Shillingford v. Holmes,* 634 F.2d 263, 265 (5th Cir.1981). Although the plaintiff's complaint asserts that his claims arise under various constitutional amendments, it does not set forth the requisite factual allegations to support such claims.

■ For example, preparing a list of persons to be investigated did not violate the plaintiff's constitutional rights. The pleadings also fail to demonstrate how the alleged derogatory remarks deprived him of a fair trial, or in some way colored the opinion of the jury that actually heard his case. The plaintiff does not indicate what information was obtained by Rodriguez's investigation, what information was contained in the exhibits allegedly provided to Clark, or how he

over a 5–day period. The plaintiff's attorney, Stu Stewart, was present during these discussions. The plaintiff does not mention that these discussions were (unsuccessfully) used to negotiate a plea agreement on his behalf.

5. The Court assumes that Clark received these exhibits during the investigative phase. Howev-

er, if the exhibits were reviewed and obtained in preparation for trial, it would be absolute immune prosecutorial conduct. Neither the defendants nor the plaintiff have described the substance or relevance of these exhibits. The record, likewise, does not give any indication of its relevance.

was harmed by any disclosure during his trial.

■ The plaintiff also contends that Clark violated his Fourth Amendment rights by requiring him, as custodian of RMG's corporate records, to produce the corporation's business records to the grand jury, without first warning him that he was the target of a grand jury investigation. Unlike individuals, corporations that are prosecuted are subject to subpoena. *Peel v. United States,* 316 F.2d.907, 910–911 (5th Cir.1963). Furthermore, although "the Fourth amendment protects corporations from subpoenas duces tecum that are unusually broad neither the officers of the corporation, the shareholders, ... the custodian of the records, nor the corporation itself, has any Fourth Amendment interest, [beyond] requiring reasonable specificity, in [the] corporate records." *United States v. Lartey,* 716 F.2d 955, 961 (2d Cir.1983) (citing *Wheeler v. United States,* 226 U.S. 478, 33 S.Ct. 158, 57 L.Ed. 309 (1913)).

■ In this case, the plaintiff's allegations do not pertain to the form of the grand jury subpoena requesting RMG's corporate records; rather, they involve the plaintiff's Fifth Amendment right against self incrimination. That is, the plaintiff maintains that he should have been forewarned that he was a target or subject of a criminal investigation before being required to turn over the corporation's records to the grand jury. However, when "subpoenaed documents [are] corporate records ... no Fifth Amendment privilege applie[s]." *Lartey* 716 F.2d at 961, n. 3 (citing *Wilson v. United States,* 221 U.S. 361, 382, 31 S.Ct. 538, 545, 55 L.Ed. 771 (1911)). Furthermore, as an officer of RMG, the plaintiff "has no constitutional right to refuse production of the corporation's records, even though the records may incriminate him personally." *United States v. Habig,* 474 F.2d 57, 61 (7th Cir.1973) (citing *Wilson,* 221 U.S. at 361–66, 31 S.Ct. at 538–39)).

Section 1983 imposes liability for violations of rights protected by the Constitution, and the plaintiff has not set forth any such violations. The Court, therefore, dismisses the plaintiff's claims as they relate to Clark. Next, the Court turns to the claims against Artru.

## C. The Malicious Prosecution Claim Against Artru

The plaintiffs first-amended complaint states that, in causing the plaintiff to be prosecuted, Artru violated the plaintiff's Fourth Amendment right to be free from unreasonable seizure of his person. Artru, however, contends that the plaintiff's malicious prosecution claim fails because he has not been deprived of liberty consistent with the concept of "seizure."

■ In a malicious prosecution action, a plaintiff must establish that a right under the Fourth Amendment was violated in order to elevate a common-law tort to constitutional proportions. *Albright v. Oliver,* 510 U.S. 266, 271–74, 114 S.Ct. 807, 810–13, 127 L.Ed.2d 114 *(1994); Eugene v. Alief I.S.D.,* 65 F.3d 1299, 1303–04 (5th Cir.1995). The Supreme Court has held that "substantive due process, with its 'scarce and open-ended' 'guideposts,' ... (citation omitted) ... affords [the plaintiff in a malicious prosecution action] no relief." *Albright,* 510 U.S. at 275, 114 S.Ct. at 813–14. Therefore, there is no substantive due process right to be free from criminal prosecution except in the absence of probable cause. *Morin v. Caire,* 77 F.3d 116, 120 (5th Cir.1996).

■ "The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—*i.e.,* the right to be free of unreasonable or unwarranted restraints on personal liberty." *Singer v. Fulton County Sheriff,* 63 F.3d 110, 116 (2d Cir.1995). A seizure occurs "only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *See Posr v. Doherty,* 944 F.2d 91, 97 (2d Cir.1991).

■ In the instant case, the plaintiff reported to the U.S. Marshal's office following his *criminal* indictment.[6] While at the Mar-

---

**6.** An order issuing an arrest warrant for the

plaintiff was signed by Magistrate Judge Francis

shal's office, he was booked, fingerprinted, photographed, handcuffed, and taken before a magistrate judge. It is obvious that the plaintiff surrendered to the government's show of authority, *i.e.,* in response to the *criminal* indictment. *See Whiting v. Traylor,* 85 F.3d 581, 585 (11th Cir.1996) (plaintiff could institute a section 1983 claim if he is seized after an information has been filed); *cf. Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 811–12, 127 L.Ed.2d 114 (1994) (voluntary surrender following the issuance of an arrest warrant is a seizure); *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1878–79, 20 L.Ed.2d 889 (1968) (surrender to the state's show of authority constitutes a seizure). A reasonable person under those circumstances would not have felt free to leave until the arraignment was completed and he was released on bail. *Niemann v. Whalen,* 911 F.Supp. 656, 668 (1996) (plaintiff was seized when she surrendered at the state police barracks to be processed and taken before a judge for an arraignment). The plaintiff has, therefore, alleged a deprivation of liberty guaranteed to him by the Fourth Amendment.

The Court's inquiry does not end here; it will now consider whether Artru's conduct was of such nature that a reasonable person would have known that his conduct violated federal law.

**1. Artru's Conduct Was Objectively Reasonable**

In *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics,* 403 U.S. 388, 397, 91 S.Ct. 1999, 2005, 29 L.Ed.2d 619 (1971), the Supreme Court extended the 42 U.S.C. § 1983 remedy for violation of constitutional rights by those acting under *color of law* to federal law enforcement officers. A federal official will not be personally liable in a *Bivens* action for violations of an individual's constitutional rights if the official acts in good faith. *Butz v. Economou,* 438 U.S. 478, 497, 98 S.Ct. 2894, 2906, 57 L.Ed.2d 895 (1978). Indeed, government officers who have been sued for constitutional violations cannot be held liable for "mere mistakes in judgement," but only for conduct that they "knew or reasonably should have known" would violate the constitutional rights of the plaintiffs, or actions taken "with the malicious intention to cause a deprivation of constitutional rights." *Id.* at 498 & 507, 98 S.Ct. at 2906 & 2911. The Supreme Court has determined that a federal official's immunity will be measured against an objective standard, rather than a subjective good-faith standard. *Harlow v. Fitzgerald,* 457 U.S. 800, 818–19, 102 S.Ct. 2727, 2738–39, 73 L.Ed.2d 396 (1982).

In his complaint, the plaintiff characterizes his dealings with Universal as legitimate, lawful business transactions. Not surprisingly, he attributes all of his legal woes to the defendants' alleged malicious conduct. Specifically, he contends that Artru's malicious false testimony and material omissions directly led to his criminal prosecution for bank and tax fraud. The plaintiff claims that Artru made at least 50 materially false statements and omissions to the grand jury.[7] He alleges, for example, that Artru falsely testified that the plaintiff had treated his tax deduction as a sale of his RMG stock when, in fact, the plaintiff had not sold his ownership interest. The plaintiff further contends that Artru should have informed the grand jury that he took a worthless stock deduction, which is permissible under IRS regulations.[8]

---

H. Stacy. The warrant, however, was not issued at the request of the United States Attorney's Office because the defendant made a timely appearance. The Court is certain that the plaintiff knew full well that he would have been arrested had he not voluntarily surrendered.

7. The plaintiff only sets forth 10 such statements in his first-amended complaint. He also contends that many of the false statements and material omissions made by Artru were contained in a report authored by Artru that was allegedly given to the grand jury. Both Clark and Artru deny

that Artru's investigative report was ever offered to the grand jury. Assuming that the grand jury did receive the report, the Court finds that the allegedly false statements and material omissions were immaterial, and even if they were material, there was still a sufficient basis to indict the plaintiff on other evidence presented.

8. The Court is of the impression that IRS regulations require that the deduction be characterized as a sale for purposes, of taking the deduction.

The Court wholly rejects the plaintiff's arguments. The plaintiff can only blame himself for his legal predicament. His numerous inconsistent and conflicting statements regarding ownership of the aircraft and his business dealings with Universal were the basis for his indictment.

The plaintiff, for example, repeatedly emphasizes that he never sold his RMG stock. He contends that he merely followed IRS regulations when he took a worthless stock deduction in the amount of $25,785. However, approximately 30 days before he filed his 1986 tax return, the plaintiff submitted a financial statement to Universal, indicating that he still owned RMG stock worth $15,000. The Internal Revenue Code, 26 U.S.C. section 165(g), requires that the stock be worthless when it is written off, and a value of $15,000 approximately 30 days before it is written off is hardly evidence of worthlessness. Furthermore, section 165(g) requires that the stock be written off at year end,— which for the plaintiff, would have been December 31st—and not August of 1986 as done by the plaintiff. The evidence shows that under an objective standard, Artru's testimony was clearly not unreasonable. Artru believed that the positions taken by the plaintiff were inconsistent and, therefore, in violation of the law.

 Even if this Court determined that Artru acted objectively unreasonably, the plaintiff's malicious prosecution claim would fail for other reasons. To prevail on a malicious prosecution claim, a party must show among other things, that the defendant acted without probable cause. *Taylor v. Gregg*, 36 F.3d 453, 455 (5th Cir.1994). During the plaintiff's criminal case, this Court held that sufficient evidence existed to try the plaintiff on the bank fraud counts. This Court dismissed the tax count, not for the lack of probable cause, but because the conduct represented the probable cause for the bank fraud counts. Thus, the tax count became the basis, or *sine qua non*, for the bank fraud counts.

In ruling on the plaintiff's Rule 29 motion during his criminal trial, this Court stated:
 ...Because count 5 fails [the tax count], it also proves up for the jury's purposes, from my perspective ... that the case should go to the jury on the other counts because this is an inconsistent position. It is consistent internally because he [the plaintiff] is saying, "I never owned it" [referring to the King Air 100 Aircraft]. But it's inconsistent with what he has presented to this financial institution to say that he is the owner. And that is in my opinion a conspiracy, the false statement, the bank fraud, the first four counts....

Indeed, the Court perceived the plaintiff's fraud as follows:
 [The plaintiff] wanted it both ways. He wanted to deliver the plane to the institution by pretending to be the owner and saying——pretending it publicly and from a document point of view, he was the owner. But on the side, having this side agreement that wasn't reported [the side agreement that the plaintiff would be a nominee owner] he was not.

With respect to the tax fraud count, the Court reasoned the following:
 I'm not suggesting that this conduct [referring to the worthless stock deduction on the plaintiff's July 1986 personal income tax return] is not suspect and see it as conduct that arises out of his scheme to defraud the institution, not necessarily as a separate event or a crime ... you need to know what happened in counts 1 through 4 to understand what you're talking about in count 5. And to me, that's relevant conduct for counts 1 and 4, particularly on the conspiracy aspect of it. But I don't know if its material, sufficiently material of any false statement to rise to the level that would be more than just misdemeanor type conduct.

Accordingly, the Court dismisses the plaintiff's complaint as it relates to Artru because there was sufficient probable cause to indict the plaintiff.

### D. Claims Against Rodriguez

 The plaintiff simply alleges that Rodriguez denied that he was the target of an investigation when she interrogated him on January 30, 1990. This conduct does not amount to a constitutional injury (see discus-

sion below). Accordingly, the Court dismisses the plaintiff's *Bivens* claims as they relate to Rodriguez because the plaintiff failed to set forth any conduct that violated the Constitution.

### E. The Plaintiff's Remaining Constitutional Claims

■ When a plaintiff brings a cause of action under *Bivens*, for violations of constitutional rights, he must plead "specific facts, not simply legal and constitutional conclusions" in order to support such an action. *Angel v. City of Fairfield*, 793 F.2d 737, 739 (5th Cir.1986). The plaintiff has not met this standard.

■ The plaintiff alleges that Rodriguez and Artru violated IRS regulations by failing to inform him that he was the target of their investigation. No *Bivens* action automatically arises from the failure of an agent to follow IRS procedures, including failure to identify a person as a target of investigation. *Cf. United States v. Kaatz*, 705 F.2d 1237, 1243 (10th Cir.1983) (violation of IRS audit handbook rules on fraud referral does not prove a violation of taxpayers' constitutional rights). Admittedly, a consent search is unreasonable under the Fourth Amendment if the consent was induced by deceit, trickery or misrepresentations made by an agent. *United States v. Tweel*, 550 F.2d 297, 299 (5th Cir.1977); *see also United States v. Prudden*, 424 F.2d 1021, 1033 (5th Cir'.) *cert. denied*, 400 U.S. 831, 91 S.Ct. 62, 27 L.Ed.2d 62 (1970) (mere failure by IRS agent to warn that investigation might result in criminal charges was not fraudulent or deceitful). While it is undisputed that the special agents from the CID, including Rodriguez and Artru, contacted the. plaintiff, the plaintiff does not specify which, if any, consent was obtained by trickery, deceit, or misrepresentation. The plaintiff merely alleges that the agents were out to "get him," which is a conclusion and clearly insufficient to support a claim under the Fourth Amendment.

The plaintiff also states that within a day or two of his arraignment, newspapers in the Mbank area, where his law office was located, published news of his indictment. He alleges that the defendants played a part in this announcement in order to injure and tarnish his reputation. The plaintiff, however, does not indicate what role, if any, Clark, Artru, and Rodriguez played in this publication and how such conduct violated his constitutional rights.

The Court, accordingly, dismisses the plaintiff's constitutional claims.

### F. The Alleged Conspiracy Claim is Dismissed

■ The plaintiff alleges that Clark, Artru, and Rodriguez engaged in a conspiracy to convict him, evidenced by the following conduct: 1) a "hit list" of individual targets for criminal prosecution; 2) the option of being either a witness or a target so as to convict anyone on the "hit list"; 3) an "inordinate" number of criminal referrals and indictments arising out of the collapse of a single institution; 4) intentional loss of documents and testimony that should have been presented to the grand jury; and 5) the intentional omission of relevant evidence, and submission of false statements and reports.

■ When the "underlying activity at issue is covered by absolute immunity, the 'plaintiff derives no benefit from alleging a conspiracy.'" *Pinaud v. County of Suffolk*, 52 F.3d 1139, 1148 (2d Cir.1995) (quoting *Hill v. City of New York*, 45 F.3d 653, 659 n. 2 (2d Cir.1995)). As discussed above, prosecutorial immunity from section 1983 liability is broadly defined, covering "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." *Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir.1994). Therefore, when the underlying acts are protected by absolute immunity, mere allegations that the prosecutor performed these acts in the course of a conspiracy will not be sufficient to avoid absolute immunity. *See Holloway v. Walker*, 765 F.2d 517, 522 (5th Cir.), *cert. denied*, 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985) (holding that judicial immunity is not lost because of allegations of conspiracy). Therefore, the defendants are immune from the plaintiff's conspiracy claims.

Furthermore, "[a plaintiff] who asserts [a] conspiracy claim under civil rights statutes must plead the operative facts upon which [his] claim is based. Bald allegations, that a conspiracy existed, are insufficient." *Lynch v. Cannatella*, 810 F.2d 1363, 1369–70 (5th Cir.1987). The plaintiff's complaint points to no facts that would support a conspiracy claim against Clark, Artru, and Rodriguez. Instead, the plaintiff relies on legal conclusions and bald allegations.

The Court finds the plaintiff's sweeping conspiracy allegations devoid of any material or operative facts that would support a conspiracy claim. Consequently, the plaintiff's conspiracy claims are dismissed.

## V. CONCLUSION

For the reasons set forth above, the plaintiff's Fourth, Fifth, and Fourteenth Amendment claims against Clark, Artru, and Rodriguez are dismissed. The plaintiff may reassert a complaint if done properly; however, further pleadings that do nothing more than reiterate the same inadequate factual allegations may subject the plaintiff to sanctions under Federal Rule of Civil Procedure 11. *Marts v. Hines*, 68 F.3d 134, 136 (5th Cir.1995).

The plaintiff's state common-law claims shall also be dismissed with prejudice. *See* 28 U.S.C.A. § 1367 (practice commentary) (West 1993) (explaining that the decision to decline to exercise supplemental jurisdiction over state-law causes of action after dismissal of all claims over which district court had original jurisdiction under § 1367(c)(3) will "hinge on the moment within the litigation when the dismissal of the touchstone claim takes place, and on the other surrounding circumstances"); *see also United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) ("Certainly, if the federal claims are dismissed before trial, the state claims should be dismissed as well."). Other, surrounding circumstances dictate that the defendants, Artru and Rodriguez, as federal officials, may not be sued individually for common-law torts allegedly committed while acting within the scope of their employment: Rather, the plaintiff's exclusive remedy lies against the United States. 28 U.S.C. § 2679(b)(1) (1996).

It is so ORDERED.