Mrs. Susie Lite MORRISON, et al.,
Plaintiffs-Appellants,

v.

CITY OF BATON ROUGE, et al.,
Defendants-Appellees.

No. 84–3565
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

May 28, 1985.

White & Pitre, Marion Overton White, Opelousas, La., for plaintiffs-appellants.

Mary H. Thompson, Baton Rouge, La., for Ossie Brown.

Before GEE, RUBIN and RANDALL, Circuit Judges.

PER CURIAM:

This case presents the question whether a state prosecutor may be liable for damages under 42 U.S.C. § 1983 for maliciously presenting evidence to a grand jury in a manner calculated to clear a suspect of wrongdoing. We conclude that in such circumstances a prosecutor is absolutely immune from liability for damages.

I.

On March 11, 1978, a resident of Baton Rouge, Louisiana, reported to the police department that his home had been burglarized. When officers arrived at the residence to investigate, they discovered Clarence Morrison, Jr., the fourteen-year-old son of the plaintiffs, hiding in a closet. Moments later, there occurred a tragic incident, the details of which are not relevant

to this appeal: a Baton Rouge police officer shot and killed the boy.

On November 29, 1978, the plaintiffs commenced this action to recover damages for their son's death from the City of Baton Rouge, the mayor, the police chief, the police officer who fired the fatal shot, and Ossie B. Brown, the District Attorney of East Baton Rouge Parish. The plaintiffs allege a cause of action for the deprivation of civil rights under 42 U.S.C. §§ 1983, 1985, and 1988 and a pendent-jurisdiction claim for wrongful death under Louisiana law. The complaint alleges that Morrison, a black, was summarily executed "pursuant to the City of Baton Rouge's long, historic and often protested policy of summary punishment of blacks by white policemen when the former [are] found in incriminating situations." According to the complaint, the individual defendants, each of whom is white, maliciously participated either in the formulation or the execution of this policy through which, in this case, they deprived Morrison of life without due process. With respect to Brown, the district attorney, the complaint makes only two conclusory allegations: (1) "the defendants have had the active cooperation of the East Baton Rouge District Attorney's office ... to execute its policies of summary infliction of punishment or death on young blacks" and (2) the policy pursuant to which Morrison was shot is implemented "with the legal back-up of the District Attorneys of East Baton Rouge which ..., in effect, immunize[s] policemen from punishment or reprimand." The complaint does not specifically allege any act or omission undertaken by Brown or any other district attorney in connection with Morrison's death.

Brown moved to dismiss the action against him for failure to state a claim upon which relief can be granted. He argued that the allegations of the complaint are too vague and conclusory to state a claim and that, at any rate, he is absolutely immune from liability under *Imbler v. Pachtman*, 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976), because any action he took with respect to Morrison's death was "performed in his official role" as prosecu-

tor. The district court agreed and on May 17, 1979, granted the motion to dismiss.

The plaintiffs attempted to perfect an appeal to this court from the order dismissing their claims against Brown. Because that order was not a final judgment, we dismissed the appeal for want of jurisdiction. *See Morrison v. City of Baton Rouge*, 614 F.2d 77 (5th Cir.1980). Thereafter, the district court denied plaintiffs' request for a Rule 54(b), Fed.R.Civ.P., certification of the dismissal order. Following protracted discovery proceedings, the plaintiffs obtained leave to amend their complaint. On March 25, 1982, the plaintiffs filed an "Amended and Supplemental Complaint" which, like the previous complaint, names Brown as a defendant. The amended complaint, which was served upon Brown, again alleges that Brown "actively cooperated" in the implementation of an illegal policy of summary punishment of black youths. This time, however, the plaintiffs' allegations were somewhat more specific: (1) the complaint lists the names of twelve black youths other than Morrison who since 1969 have been killed by Baton Rouge police officers; (2) the complaint further alleges that, in each of these previous cases, "the killers were [not] punished or reprimanded either by administrative procedures, District Attorney information procedures or by Grand Jury procedures"; and (3) the complaint also states that, following Morrison's death, "the City police together with the active cooperation of ... Brown ... embarked upon a course of action designed to further the ... [summary execution] plan ... and to cover up the true facts [of Morrison's death] by causing selective, non-relevant 'evidence' to be presented to a grand jury and 'down-grading' the testimony of an eye-witness to the actual killing." Finally, the amended complaint adds an additional conclusory allegation not contained in the initial pleading: "[the shootings of black youths] were committed pursuant to a plan or conspiracy tacitly confected between the Mayor-President, the Chief of Police and the District Attorney to intimidate and deprive black

citizens of the equal protection of the law and to deny to them specific constitutional guarantees."

On June 7, 1982, Brown again moved to dismiss the complaint for failure to state a claim. Construing the allegations of the amended complaint as "nothing more than claims of prosecutorial misconduct in the presentation of the state's case and initiation of prosecution," the district court, on August 2, 1982, again granted the motion to dismiss. The district court found that, assuming the truth of the specific allegations of the amended complaint, Brown's conduct falls within *Imbler*'s umbrella of immunity. On May 31, 1984, Brown moved, under Rule 54(b), for entry of final judgment in his favor. Before the motion was considered, the plaintiffs, on June 8, 1984, moved to enroll their current attorney as new trial counsel. The latter motion was granted on July 9, 1984. Two days later, on July 11, the district court granted the motion for the entry of final judgment in favor of Brown on the ground that, by failing to respond to the motion, the plaintiffs effectively consented to the entry of final judgment. A motion to reconsider was denied. The plaintiffs appeal from the final judgment dismissing their allegations against Brown for failure to state a claim.

## II.

■ On appeal, the plaintiffs urge three reasons for reversing the judgment in favor of Brown: (1) the complaint is not vague or conclusory; rather, it is sufficiently specific to satisfy the notice-pleading requirements of Rule 8(a), Fed.R. Civ.P.[1]; (2) the complaint alleges activity by Brown outside of the scope of the quasi-judicial immunity recognized in *Imbler;* and (3) the district court erred by granting the motion for a Rule 54(b) final judgment only two days after the court allowed the plaintiffs to enroll new trial counsel. The latter ground is stated but is not briefed; we shall not consider it. *See, e.g., Bray v.*

*Director, Office of Workers' Compensation Prgrams,* 664 F.2d 1045, 1048–49 (5th Cir.1981); *Kemlon Products & Development Co. v. United States,* 646 F.2d 223, 224 (5th Cir.), *cert. denied,* 454 U.S. 863, 102 S.Ct. 320, 70 L.Ed.2d 162 (1981).

■ In reviewing the propriety of a dismissal on the pleadings, we of course accept the truth of the plaintiff's well-pleaded allegations. *See, e.g., Dickens v. Lewis,* 750 F.2d 1251, 1254 (5th Cir.1984). We are also mindful that the pleading requirements of the federal rules are liberal; often the litigants may plead generally and discover the precise factual basis for their claim through equally liberal pretrial discovery procedures. *See Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) ("complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"). There are of course limits: "In the now familiar cases invoking 42 U.S.C. § 1983 we consistently require the claimant to state specific facts, not merely conclusory allegations." *Elliot v. Perez,* 751 F.2d 1472, 1479 (5th Cir.1985). *See also Hobson v. Wilson,* 737 F.2d 1, 30 (D.C.Cir.1984) ("every ... circuit has articulated a requirement of particularity on pleading for civil rights complaints"), *cert. denied,* —— U.S. ——, 105 S.Ct. 1843, 85 L.Ed.2d 142 (1985). Moreover, we have recently recognized a special tension in cases involving civil rights complaints against public officials for actions undertaken in their official capacities. In this context, liberal notions of notice pleading must ultimately give way to immunity doctrines that protect us from having the work of our public officials chilled or disrupted by participation in the trial *or* the pretrial development of civil lawsuits. Thus, in *Elliot,* we held that, to commence a lawsuit against a public official for acts for which he is potentially immune, the complaint must allege "with particularity all material facts on which

---

**1.** Rule 8(a) provides that a "pleading which sets forth a claim for relief" shall contain, *inter alia,* "a short and plain statement of the claim showing that the pleader is entitled to relief."

[the claimant] contends he will establish his right to recovery, which will include detailed facts supporting the contention that the plea of immunity cannot be sustained." *Id.* 751 F.2d at 1482. We also held that, if "a complaint against a defendant state legislator, judge, or prosecutor (or similar officer) adequately raises the likely issue of immunity," the district court should on its own motion require the plaintiff to meet this pleading standard: "The trial judge may not wait on motions or other actions by the parties or counsel." *Id.* at 1480.

In *Elliot,* the plaintiff sued two district attorneys, a state judge, and a witness who appeared before a grand jury convened by one of the defendant-district attorneys in the defendant-judge's court. The complaint alleged generally that the defendants conspired to injure the plaintiff, who was the grand jury foreman, by discharging the grand jury and commencing a criminal prosecution against the plaintiff for jury tampering. The district court granted the motions to dismiss of the judge and one of the prosecutors. On appeal, we were unwilling "on the loose allegations of the complaint, [to] undertake the 'iffy' task of determining whether each (or both) appellants are entitled to immunity." We said:

Any such attempt would be not only arduous, but the result would be suspect. We would be running the risk of declarations of law on something which might never be. Vitally important to the public good as is the doctrine of official immunity, we ought not to imperil its application or undermine its strength by opinions expressed on situations or circumstances which may never have occurred. And yet, that is likely to happen when neither us, nor the trial court, has any but the vaguest of notions about what the real probable facts are.

*Id.* at 1482. Accordingly, in the interest of "good administration," we vacated the judgment and remanded the case to the district court with directions to require plaintiff to state with particularity the basis upon which he will seek to avoid the bar of absolute immunity. *Id.*

In this case, the district court, in effect, followed the course we outlined in *Elliot.* The court dismissed the original complaint, not because Brown's conduct with respect to Morrison's death is necessarily immunized by *Imbler,* but because, in the light of *Imbler,* the complaint's broad conclusions, which are unsupported by specific factual allegations, are insufficient to state a claim. At this point, under *Elliot,* the district court should have required the plaintiffs to amend their complaint to state with particularity the factual basis of their claim against Brown. Although the district court did not expressly instruct the plaintiffs to amend their complaint, they eventually did so on their own. In fact, the plaintiffs in this case received far more accommodation from the district court than *Elliot* contemplates. The district court refused to convert the initial dismissal of Brown into a final judgment and, over three years after granting Brown's motion to dismiss, allowed the plaintiffs to amend their complaint to reassert claims against Brown. During this three-year period, the plaintiffs took advantage of discovery procedures [2] and presumably had an opportunity to investigate their claims in detail. The amended complaint filed on May 25,

---

2. The plaintiffs engaged in the following discovery:
　　(1) Interrogatories served on the police officer who fired the fatal shot and on the mayor;
　　(2) Request for production of documents served on the mayor, the chief of police, and the police officer;
　　(3) Depositions of Dr. Hypolite T. Landry; Alvin Jerome Taylor; Harry Coleman; Geneva Molden; and Ossie Brown.
Brown's deposition was taken after his motion to dismiss was filed but prior to the court's ruling on the motion. Presumably, had it revealed facts to support the claim against Brown, the plaintiffs could have brought those facts to the district court's attention. It is true that Brown's deposition was not very productive because he refused to answer any questions about grand jury proceedings. It is also true, however, that the plaintiffs did not inquire about any other connection he may have had with Morrison's death or with the city's alleged policy of summary execution of black youths.

1982, unlike the initial complaint, does allege specific facts upon which Brown's alleged liability is premised. Thus, we need not remand this case for a further statement by the plaintiffs of the factual basis of their claim against Brown. Unlike in *Elliot,* the plaintiffs in this case have been apprised of the insufficiency of their conclusory allegations against Brown and have been afforded an opportunity to plead facts that would overcome the bar of *Imbler* immunity. We can assume, therefore, that the specific allegations of the amended complaint constitute the plaintiffs' best case for demonstrating that Brown acted outside the scope of *Imbler* immunity. *Cf. Arsenaux v. Roberts,* 726 F.2d 1022, 1023 (5th Cir.1982) ("The conspiracy allegations against the lawyer were but conclusory and Arsenaux was not able (or not willing), upon being given the opportunity, to amend his complaint to make the allegations specific."). We turn to an evaluation of the plaintiffs' allegations in the light of the principles enunciated by the Supreme Court in *Imbler.*

### III.

We agree with the district court that the plaintiffs' general allegations of conspiracy and "active cooperation," particularly because the complaint on its face raises the possibility of official immunity, are insufficient to withstand a motion to dismiss. *See Elliot,* 751 F.2d at 1479; *see also Arsenaux,* 726 F.2d at 1024 ("Mere conclusory allegations of conspiracy cannot, absent reference to material facts, survive a motion to dismiss."). The only specific allegations against Brown are that, apparently to influence the grand jury to clear Morrison's killer, he presented irrelevant evidence to the grand jury and "downgraded" the testimony of a grand jury witness. The plaintiffs argue that these activities were conducted by Brown in his role as an investigative officer, not as an advocate. Thus, Brown is not protected by *Imbler* because the Supreme Court expressly limited the scope of its decision in that case to activities "intimately associated with the judicial phase of the criminal process." 424 U.S. at 430, 96 S.Ct. at 995.[3]

**3.** In *Imbler,* the plaintiff had been convicted of murder in a state court. Years later, after a federal district court issued a writ of habeas corpus, the plaintiff was released from custody. He commenced a section 1983 suit against the state attorney who prosecuted the case against him in which he alleged that the prosecutor knowingly used perjured testimony and suppressed evidence favorable to the defense. After determining that the common law afforded prosecutors absolute immunity in such circumstances, the Supreme Court determined that policy considerations dictated the same rule in a section 1983 suit. The Court held that the prosecutor's activities "were intimately associated with the judicial phase of the criminal process, and thus were functions to which the reasons for absolute immunity apply with full force." *Id.* at 430, 96 S.Ct. at 995.

The reasons to which the Court referred include: (1) the fear that the threat of potential liability for damages might constrain the independent exercise of the prosecutor's judgment "in deciding which suits to bring and in conducting them in court"; (2) the frequency with which one could expect suits by defendants upset with either the decision to prosecute them or the manner in which the trial was handled; (3) the "substantial danger of liability even to the honest prosecutor" flowing from the difficult decisions with which a prosecutor is faced; (4)

the possibility of "an adverse effect upon the functioning of the criminal justice system if a prosecutor's decision on whether to prosecute or on what evidence to present is governed by concerns of personal liability"; (5) the existence of means other than the imposition of personal liability on the prosecutor to insure that criminal defendants receive fair treatment in the judicial process; and (6) the existence of means other than the imposition of personal liability on the prosecutor, such as professional discipline and criminal sanctions, to deter dishonest prosecutors.

The Court expressly did not decide whether similar reasons justify absolute immunity when the prosecutor acts outside of the judicial phase of the criminal process: "We have no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of an advocate." *Id.* at 430–31, 96 S.Ct. at 995. In *Marrero v. City of Hialeah,* 625 F.2d 499, 510 (5th Cir.1980), *cert. denied,* 450 U.S. 913, 101 S.Ct. 1353, 67 L.Ed.2d 337 (1981), believing that we were controlled by the Supreme Court's subsequent decision in *Butz v. Economou,* 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) (absolute immunity to federal officials acting in quasi-judicial role), we answered the question left open in *Imbler:* "[W]e

In arguing that Brown's conduct is not protected by absolute immunity, the plaintiffs rely principally on *Briggs v. Goodwin,* 569 F.2d 10 (D.C.Cir.1977), *cert. denied,* 437 U.S. 904, 98 S.Ct. 3089, 57 L.Ed.2d 1133 (1978).[4] In *Briggs,* a federal prosecutor participating in a grand jury investigation served subpoenas on several witnesses who were members of a protest group suspected of violating federal anti-riot laws. The witnesses, who feared infiltration into their group by FBI agents, sought disclosure by the government of the identity of any informants among their ranks. In response, the district court placed the prosecutor on the witness stand and asked him if any of the subpoened witnesses were in reality government employees. The prosecutor testified under oath that there were no informants among the witnesses. The prosecutor's testimony was false, and his alleged perjury formed the basis of a *Bivens* action against him. The District of Columbia Circuit held that the prosecutor was not immunized by *Imbler,* principally because the prosecutor's conduct could not be characterized as advocacy and because the grand jury proceedings were part of an ongoing investigation to determine if any federal crimes had been committed. The grand jury had not focused on specific individuals and was playing a broader investigative role than the typical grand jury asked simply to true bill or no bill a specific suspect.

From *Briggs,* the plaintiffs argue that the fact that Brown's alleged misconduct occurred before a grand jury does not automatically supply the intimate connection with the judicial process upon which *Imbler* immunity depends. We agree. In fact, to determine whether *Imbler* immunity applies, we have always conducted a functional analysis of a prosecutor's activities. *See, e.g., Marrero v. City of Hialeah,* 625 F.2d at 505 ("our inquiry centers on the nature of the official behavior challenged and not the status or title of the officer").[5] We conclude, however, that, in presenting evidence to a grand jury convened to consider whether to indict the police officer who shot Morrison, Brown was fulfilling a function to which *Imbler* immunity applies. We note that the District of Columbia Circuit has recently found *Imbler* immunity in a case analogous to this one while, at the same time, limiting the *Briggs* decision to prosecutorial activity, other than the presentation of evidence of probable cause, before a grand jury on a "broad fact-finding mission." *See Gray v. Bell,* 712 F.2d 490, 503–04 (D.C.Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984). In *Gray,* federal prosecutors were accused of failing to present exculpatory evidence and of presenting false and misleading evidence to the grand jury that indicted the plaintiff. The court found the prosecutor's activity to be immunized. Said the court: "We regard it as settled that presentation of evidence to an indict-

---

conclude that a prosecutor is not entitled to absolute immunity when he engages in activities outside his quasi-judicial role."

**4.** A portion of the *Briggs* decision dealing with witness-immunity, as opposed to prosecutor-immunity, has been vacated. *See Briggs v. Goodwin,* 712 F.2d 1444 (D.C.Cir.1983), *cert. denied,* — U.S. —, 104 S.Ct. 704, 79 L.Ed.2d 169 (1984).

**5.** The following cases are among our decisions defining the scope of the quasi-judicial function to which *Imbler* immunity applies: *McGruder v. Necaise,* 733 F.2d 1146 (5th Cir.1984) (offer to drop criminal charges in exchange for pretrial detainee's decision to drop civil rights suit; held, immunized); *McCoy v. Gordon,* 709 F.2d 1060 (5th Cir.1983) (presentation of perjured

testimony at trial; held, immunized); *Ryland v. Shapiro,* 708 F.2d 967 (5th Cir.1983) (covering-up murder by interfering with investigation by police and coroner; held, not immunized); *Marrero,* 625 F.2d at 499 (accompanying police on execution of illegal search warrant; held, not immunized); *Cook v. Houston Post,* 616 F.2d 791 (5th Cir.1980) (interviewing grand jury witness before presenting testimony to grand jury; held, immunized); *Henzel v. Gerstein,* 608 F.2d 654 (5th Cir.1979) (filing baseless charges, offering perjured testimony, suppressing exculpatory evidence, refusing to investigate prisoner's complaints; held, immunized); *Humble v. Foreman,* 563 F.2d 780 (5th Cir.1977) (participation in plea bargaining; held, immunized); *Bruce v. Wade,* 537 F.2d 850 (5th Cir.1976) (decision to pursue indictment after initial no bill; held, immunized).

ing Grand Jury falls within the scope of the advocatory prosecutorial conduct protected by *Imbler.*" 712 F.2d at 502 & n. 37 (citing cases). *See also Maglione v. Briggs*, 748 F.2d 116, 118 (2d Cir.1984) ("The presentation of a case to a grand jury falls squarely within the prosecutor's traditional function and is thus subject to absolute immunity under *Imbler.*").

Our decisions are in accord with the District of Columbia Circuit's recent decision in *Gray* on the presentation of evidence of probable cause to a grand jury. In *Slavin v. Curry*, 574 F.2d 1256, 1265 (5th Cir.), *modified on other grounds*, 583 F.2d 779 (1978)[6], for example, we held that a prosecutor "cannot be liable for damages for his presentation of evidence to the grand jury." Moreover, in *Cook v. Houston Post*, 616 F.2d 791, 793 (5th Cir.1980), we held that certain investigative activity prior to the presentation of a case to the grand jury, such as interviewing witnesses who will appear before the grand jury, falls "within the *Imbler* shelter."

■ As summarized above, the only specific allegations against Brown concern the manner of his presentation of evidence to the grand jury. As noted, the cases establish that presentation of evidence to a grand jury in a manner calculated to obtain an indictment, even when maliciously, wantonly or negligently accomplished, is immunized by *Imbler.* These precedents control this case, therefore, unless presentation of evidence in a manner calculated to obtain a no bill, rather than an indictment, should for some reason be treated differently. It is clear, however, that a district attorney's decision *not* to prosecute a specific individual for a specific crime is within the scope of his immunity. *See McGruder v. Necaise*, 733 F.2d 1146, 1148 (5th Cir. 1984) ("decision to initiate, maintain, or dismiss criminal charges is at the core of the prosecutorial function"). In *McGruder*, plaintiff alleged that, following a grand

jury indictment, he was seriously injured in a fire at the jail in which he was incarcerated pending trial. He filed a civil lawsuit against his jailors seeking compensation for his injuries. The plaintiff further alleged that the prosecutor offered to drop the criminal charges against him if he would in turn agree to dismiss his civil action for damages. We recognized that, if the prosecutor had in fact attempted to "intimidate a citizen in his exercise of constitutional rights," his conduct would be "reprehensible" and "abhorrent." We held, however, that the decision not to prosecute, even when motivated by reprehensible or abhorrent reasons, is protected by *Imbler.* Therefore, we discern no reason that the presentation of evidence to a grand jury in a manner calculated to obtain a no bill, even if motivated by reprehensible reasons, should be treated differently than a presentation calculated to obtain an indictment. *Cf. Ryland v. Shapiro*, 586 F.Supp. 1495, 1503 (W.D.La.1984) ("Independent in the decision *not* to prosecute, or to delay prosecution, is just as important as is independence in making the decision to prosecute.").

We are mindful that the plaintiffs' generalized allegations of participation in a conspiracy to execute black youths summarily and to cover-up the true facts surrounding their deaths, if they had been supported by allegations of specific conduct outside of a prosecutor's quasi-judicial role, might well have stated a claim upon which relief could be granted. *See Ryland v. Shapiro*, 708 F.2d 967 (5th Cir.1983) (allegations that prosecutor covered-up murder committed by a fellow prosecutor by cancelling a scheduled autopsy of the victim, by persuading the coroner to sign a death certificate listing the cause of death as suicide, .and by delaying the police investigation by telling the police that the victim committed suicide state a claim). The only specific allegations against Brown, however, state conduct within the *Imbler* shelter. The plaintiffs were given an opportunity to

---

**6.** *Slavin* was overruled on other grounds in *Sparks v. Duval County Ranch Co.*, 604 F.2d 976 (1979) (en banc), *aff'd sub nom. Dennis v. Sparks*, 449 U.S. 24, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980), which holds that private individuals who conspire with public officials who are immune from liability do not enjoy derivative immunity.

amend to allege specific conduct outside of the prosecutor's quasi-judicial role in support of their conspiracy and active cooperation theories, but failed to do so; we must assume that they were unable in good faith to make such allegations. Because the policies underlying absolute immunity demand an early resolution of the issue, we cannot, therefore, allow the suit against Brown to continue.

## IV.

### CONCLUSION

For the reasons set forth above, the judgment of the district court is AFFIRMED.