# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 19-40315

United States Court of Appeals
Fifth Circuit

**FILED**
July 6, 2020

Lyle W. Cayce
Clerk

SUZANNE H. WOOTEN,

      Plaintiff - Appellee

v.

JOHN ROACH, SR.; CHRISTOPHER MILNER; GREG ABBOTT, IN HIS
INDIVIDUAL CAPACITY; HARRY EUGENE WHITE,

      Defendants - Appellants

Appeals from the United States District Court
for the Eastern District of Texas

Before BARKSDALE, HIGGINSON, and DUNCAN, Circuit Judges.

STUART KYLE DUNCAN, Circuit Judge:

Former Texas state judge Suzanne Wooten sued various state and local law enforcement officials, alleging they violated the Constitution by investigating and prosecuting her in retaliation for unseating an incumbent judge and making rulings they disagreed with. Despite the breadth of the allegations in this case and the various defenses asserted in response, the scope of issues we address in this appeal is relatively narrow: we consider only whether Defendants are entitled to absolute prosecutorial immunity for their alleged acts. We conclude that immunity shields some defendants, but not all.

No. 19-40315

We therefore affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## I.

## A.

Because this case was dismissed under Federal Rule of Civil Procedure 12(b)(1), we accept as true the following allegations in Wooten's operative complaint. *See Singleton v. Cannizzaro*, 956 F.3d 773, 779 (5th Cir. 2020).

In March 2008, Wooten defeated Judge Charles Sandoval in the Republican primary election for a seat on the 380th District Court in Collin County, Texas. She went on to win the general election and took the bench in January 2009. The day after the primary, Sandoval went to the Collin County District Attorney's Office ("CCDAO") to demand that the office investigate Wooten and "find a crime." CCDAO obliged and began investigating Wooten's alleged misbehavior—without the assistance of any law enforcement entity. Christopher Milner, the head of CCDAO's Special Crimes Unit, led the investigation. John Roach, Sr., as District Attorney, oversaw CCDAO during the relevant period.

CCDAO's investigation proceeded on the general theory that Wooten received bribes from two campaign contributors, David and Stacy Cary. The bribes were made through Wooten's media consultant, James Spencer. CCDAO investigated and eventually prosecuted her even though it knew her actions were not criminal. CCDAO wanted Wooten to leave the bench because it disagreed with her rulings in some criminal cases.

CCDAO was not the only office involved in the investigation. Relatively soon after the investigation began, Milner requested assistance from the office of the then-Texas Attorney General, Greg Abbott. Specifically, Milner asked for help from Assistant Attorney General Harry White because White had experience prosecuting election law violations. White became involved in the

2

investigation in December 2008, operating under the authority of the CCDAO and Roach. He participated initially as a Special Assistant District Attorney, was "deputized" as such in September 2009, and was eventually appointed attorney *pro tem* for the investigation in July 2010.

As part of the investigation, several grand juries were convened. The first grand jury subpoena was issued in September 2008, months before Wooten took the bench in January 2009. Multiple subpoenas for documents issued that fall. The following year, Milner began issuing grand jury subpoenas for various people connected with Wooten's campaign. Milner "grand jury shopp[ed]"—meaning, he avoided presenting Wooten's criminal case to a grand jury so that he could continue using the grand juries to investigate her. The third grand jury, convened in the fall of 2009, wrote the presiding district judge and explained "that they felt the case against Judge Wooten was unnecessary, a waste of tax payers [sic] dollars, and that no crime had been committed."

While the investigation was proceeding, Wooten continued to work as a judge. Milner would "often" sit in the back of her courtroom for no apparent reason—behavior she viewed as an attempt to intimidate her. In October 2009, her attorney met with Milner to discuss the investigation. Milner told Wooten's attorney "that [Wooten] had one week to resign, or she was going to be facing indictment and would lose her house, law license, her family, her reputation, and that he would put her in prison for a long time." Wooten declined to resign. Milner also met with James Spencer, Wooten's media consultant, and demanded he sign a blank confession. Spencer refused.

In April 2010, while the Wooten investigation was ongoing, the FBI began investigating three CCDAO attorneys: Roach, Milner, and Assistant District Attorney Greg Davis. The investigation concerned allegations CCDAO was using grand juries for politically motivated investigations, including Wooten's. The FBI interviewed various people, including a grand juror, "D.J."

D.J. told the FBI that he had concerns about CCDAO's involvement in Wooten's case, and that it seemed "like a political witch-hunt." D.J. thought Milner was "dragging out the investigation" and "it was all politically motivated."

In June 2010, the current grand jury's term was set to expire. On June 24, the grand jury voted for a ninety-day extension of its six-month term, but the presiding district judge denied the extension. Nevertheless, on June 28—after the term had expired—White requested Wooten's presence at an added grand jury session on June 30. Wooten agreed to meet with White in advance of the added session. The meeting proved unfruitful, in part because White had no questions for Wooten. Wooten interpreted the meeting as an attempt to intimidate her. Following the meeting, Wooten moved to quash the re-assembled grand jury, and the presiding judge granted the motion, concluding the government attorneys lacked authority to re-assemble the jury after its expiration date to conduct further proceedings. The judge also threatened any violators of his order with contempt.

Meanwhile, the FBI investigation into Roach, Davis, and Milner continued. It wrapped up in August 2010, after White told the FBI that CCDAO's investigation of Wooten was legitimate and a grand jury indictment was forthcoming. On October 14, 2010, Wooten was indicted for the first time.

The following July, White relayed an offer to dismiss the indictment if Wooten would resign, agree not to run for public office again, and plead guilty to a misdemeanor violation of the election code. Wooten again refused to step down. So, White went before the grand jury (the sixth such jury empaneled during the Wooten investigation) and obtained a "re-indictment" of Wooten. The indictment contained nine counts related to bribery, money laundering, tampering with records, and organized criminal activity. Wooten was convicted

by a jury. Her campaign contributors David and Stacy Cary were also convicted, and her media consultant James Spencer took a plea deal.

The Carys appealed their convictions. The Texas Court of Criminal Appeals eventually heard both cases and, in 2016, unanimously held both convictions invalid for insufficient evidence. *See David Cary v. State*, 507 S.W.3d 761, 767–78 (Tex. Crim. App. 2016); *Stacy Cary v. State*, 507 S.W.3d 750, 753 (Tex. Crim. App. 2016). Based on those decisions, Wooten filed a state habeas petition, which a state district court granted, vacating her conviction in its entirety.

**B.**

Wooten then filed this action under 42 U.S.C. § 1983 against Collin County, Roach, Milner, White, and Abbott (collectively, "Defendants"). Wooten brought various constitutional claims, claims of supervisory liability and failure to intervene, and a claim against Collin County under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). Defendants all moved to dismiss the complaint, asserting—among other defenses—various forms of immunity.

Although Defendants all urged multiple grounds for dismissal, the district court ruled narrowly. The court concluded Milner and Roach performed investigative functions and were therefore not entitled to absolute prosecutorial immunity. The court concluded White (1) was not entitled to prosecutorial immunity for his involvement in the investigation from December 2008 through July 22, 2010, but (2) was immune following his appointment as attorney *pro tem* because, after that point, his actions were in preparation for judicial proceedings. Because Abbott's immunity as a supervisor was contingent on White's, the court concluded the same reasoning applied to Abbott. The district court also denied White and Abbott's claims of

state-law official immunity,[1] noting that "conclusively establishing official immunity at this stage in the litigation [would] be difficult based on the allegations of this case." The district court did not discuss Roach and Milner's claims of official immunity, instead denying them "as moot."

Regarding Defendants' assertion of qualified immunity, the district court declined to issue a ruling. Noting Wooten had requested leave to amend her complaint, the court concluded that "allowing the Plaintiff to replead [would] assist the Court in deciding [the] qualified immunity" issue. In a footnote, the court also offered Wooten guidance on how she could strengthen her complaint. For example, the court pointed out that Wooten had not alleged facts regarding her probation, "which is a basis for a deprivation of liberty in her due process claim," and also observed that her complaint "lack[ed] factual details" about various claims.

The court thus generally denied on the merits the motions to dismiss based on prosecutorial immunity (with the narrow exception already mentioned) and official liability (for White and Abbott) under Texas law. Regarding qualified immunity, and Roach and Milner's assertions of official immunity, the court denied the motions "as moot at this time," but authorized Defendants to "reurge their motion with respect to the Plaintiff's constitutional claims and the defense of qualified immunity" once Wooten amended her complaint.[2] Defendants timely appealed.[3]

---

[1] Under Texas law, "[o]fficial immunity is an affirmative defense that protects government employees from personal liability for certain actions taken in the course of their employment." *Ramirez v. Martinez*, 716 F.3d 369, 379 (5th Cir. 2013) (citing *Telthorster v. Tennell*, 92 S.W.3d 457, 460–61 (Tex. 2002)).

[2] The court addressed and ruled on various other issues. On appeal, Defendants raise only the issues of prosecutorial, qualified, and official immunities.

[3] Collin County also appealed, but later voluntarily withdrew its appeal.

No. 19-40315

## C.

The district court proceedings continued, however. The notices of appeal were filed on April 9, 2019. The very next day, Wooten filed her Second Amended Complaint as directed by the district court. In that amended complaint, Wooten added new allegations not only regarding Defendants' assertion of qualified immunity, but also allegations bearing on Defendants' assertion of absolute prosecutorial immunity, an issue that had already been addressed by the district court and appealed by Defendants.

Defendants filed notices with the district court asserting it could not entertain Wooten's second amended complaint because the notices of appeal stripped the court of jurisdiction. The court held a hearing, at which it appeared to disagree with Defendants' assertion that it lacked jurisdiction to continue proceedings on issues it had not yet addressed on the merits.[4] The district court decided the case should proceed. Defendants subsequently moved to dismiss the second amended complaint. The district court granted in part and denied in part Defendants' motions, and also addressed the question of its continuing jurisdiction over the question of qualified immunity. The court concluded it need not decide whether it had jurisdiction to accept Wooten's second amended complaint because it construed her amended pleading not as a superseding complaint, but as "a supplement to her First Amended Complaint" that did not supersede the complaint forming the basis of

---

[4] Specifically, the district court responded to Defendants' request for "clarity" on whether they should file an answer to Wooten's second amended complaint by stating:

Well, I can't really give you clarity because I don't know what the law says in this regard. I mean, you say that it's crystal clear that we have lost jurisdiction. If that's true, then I guess you don't need to file a response. If you're wrong, they'll take a default judgment against you. . . . I didn't think I lost jurisdiction . . . when I issued the decision, but if I did, then you don't have to do anything. But if I didn't, then the case is going to proceed accordingly.

No. 19-40315

Defendants' appeal. The court then dismissed Wooten's claims of supervisory liability and failure to intervene against Milner, dismissed Wooten's claims of malicious prosecution and procedural due process against both Roach and Milner, dismissed all claims against Abbott, dismissed the claims for supervisory liability, failure to intervene, malicious prosecution, and procedural due process against White, and denied the motions as to the remaining claims. Defendants appealed that decision, and we held that appeal in abeyance pending the resolution of this appeal. *See* Order Granting Motion to Hold in Abeyance, *Wooten v. Roach*, No. 20-40004 (5th Cir. Jan. 30, 2020).

## II.

"We review a district court's dismissal under Federal Rule of Civil Procedure 12(b)(1) de novo." *Williams ex rel. J.E. v. Reeves*, 954 F.3d 729, 734 (5th Cir. 2020). In determining immunity, we accept as true Wooten's non-conclusory allegations. *See Cannizzaro*, 956 F.3d at 779. "We review questions of jurisdiction de novo." *United States v. Mills*, 199 F.3d 184, 188 (5th Cir. 1999) (per curiam).

## III.

At the outset, we must confront three jurisdictional questions.[5] First, we address whether the district court's acceptance of Wooten's second amended complaint renders this appeal moot. Second, we address Defendants' assertion that we can and should exercise jurisdiction to decide whether they are entitled to qualified immunity, even though the district court disclaimed ruling on that issue in the order forming the basis of this appeal. Third, we address whether we have jurisdiction to review Roach and Milner's official immunity claims. We hold that the district court was without jurisdiction to accept Wooten's second

---

[5] Following oral argument, we ordered supplemental briefing on these jurisdictional questions.

amended complaint; that her first amended complaint remains operative; and that this appeal is not moot. We also conclude we have jurisdiction to hear Defendants' appeal regarding prosecutorial immunity. Likewise, we have jurisdiction to hear White and Abbott's official immunity claims. But we lack jurisdiction to hear any Defendant's appeal on qualified immunity and Roach and Milner's claims to official immunity.

## A.

"[J]urisdiction is power to act, and it is essential to have clear rules that define who, if anyone, possesses this power." *Kusay v. United States*, 62 F.3d 192, 194 (7th Cir. 1995). "The filing of a notice of appeal is an event of jurisdictional significance—it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). "[A] federal district court and a federal court of appeals should not attempt to assert jurisdiction over a case simultaneously." *Id.* "When one aspect of a case is before the appellate court on interlocutory review, the district court is divested of jurisdiction over that aspect of the case." *Dayton Indep. Sch. Dist. v. U.S. Mineral Prods. Co.*, 906 F.2d 1059, 1063 (5th Cir. 1990). District courts lack "power to 'alter the status of [a] case as it rests before the Court of Appeals.'" *Id.* (quoting *Coastal Corp. v. Tex. E. Corp.*, 869 F.2d 817, 820 (5th Cir. 1989)).

Defendants asserted below, and continue to argue on appeal, that the district court exceeded its jurisdiction by accepting Wooten's second amended complaint. We agree. Our decision in *Dayton Independent School District* teaches that the district court acted beyond its jurisdiction in accepting the amended complaint.

*Dayton* was a procedurally complex case. As relevant here, the district court granted the plaintiff's motion for leave to amend the operative complaint

well after an interlocutory appeal had been taken. *See* 906 F.2d at 1062. The plaintiffs then moved to dismiss the pending appeal as moot, arguing the amendment rendered the complaint at issue on appeal inoperative. *Id.* at 1063. Disagreeing, we held the appeal was not moot because the district court lacked jurisdiction "to 'alter the status of the case as it rests before the Court of Appeals.'" *Id.* (quoting *Coastal Corp.*, 869 F.2d at 820). We focused on whether the district court's actions "significantly changed the status of the appeals." *Id.*

*Dayton* controls here. As in *Dayton*, the district court let Wooten amend her complaint after an interlocutory appeal had been taken. Wooten, like the *Dayton* plaintiff, now argues the appeal is moot. Just as in *Dayton*, however, we conclude that the district court's acceptance of the amended complaint "significantly changed the status of the appeal[]." Because Defendants' prosecutorial and official immunity defenses hinge on the facts Wooten alleged, allowing Wooten to amend those facts would necessarily affect this appeal.[6] In accepting the amended pleading, the district court thus attempted to assert jurisdiction over "aspects of the case involved in the appeal," which *Griggs* forbids. *See* 459 U.S. at 58; *see also May v. Sheahan*, 226 F.3d 876, 879–81 (7th Cir. 2000) (acceptance of amended complaint that affected ongoing interlocutory appeal exceeded district court's jurisdiction).

Wooten's attempts to distinguish *Dayton* fail. She primarily asserts that the timing of a district court's grant of leave to amend is dispositive. She points out that here, the district court granted leave to amend *before* Defendants filed

---

[6] For example, the second amended complaint alleges that, "[b]ased on timesheets obtained from the OAG, Defendant White was personally conducting investigation activities as late as at least October 2011." This fact could affect the analysis of whether White is entitled to prosecutorial immunity. *See Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993) (prosecutors not immune when performing "administrative duties and . . . investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings").

their notices of appeal, and contends that the subsequent acceptance of the amended complaint was a "purely ministerial act" by the district court clerk. Tellingly, she cites no legal authority to support her position. Our analysis in *Dayton*, however, did not turn on the timing of the district court's grant of leave to amend. Instead, we trained our sights on whether the amended pleadings would affect "the issue on appeal." *See* 906 F.2d at 1063. True, we said that "[b]y granting plaintiffs' motion to amend . . . the district court significantly changed the status of the appeals." *Id.* But what drove our analysis was not the grant of leave itself, but rather how the allegations and claims in the amended pleadings would affect the appeals. *Id.* We thus reject Wooten's assertion that our jurisdiction here turns on the timing of the district court's grant of leave to amend.

By accepting an amended pleading that altered the status of the appeal, *see id.* at 1063, the district court wrongfully asserted jurisdiction over "aspects of the case involved in [this] appeal," *see Griggs*, 459 U.S. at 58. That amended pleading therefore did not supersede the complaint at issue in this appeal, which means that this appeal is not moot.[7]

**B.**

But that conclusion does not mean we have jurisdiction to hear *all* the claims Defendants ask us to review. In addition to the issue of prosecutorial immunity, Defendants urge us to consider qualified and official immunity. Despite Defendants' protestations to the contrary, we lack jurisdiction to address qualified immunity—and official immunity as to Roach and Milner— because the district court's order before us did not rule on those issues.

---

[7] Nothing in this opinion prohibits the district court, on remand, from accepting an amended pleading from Wooten, if appropriate to do so.

No. 19-40315

As an initial matter, however, we do have jurisdiction to hear Defendants' claims to *prosecutorial* immunity, and *White and Abbott's* claims to official immunity. Generally speaking, we have jurisdiction to review all "final decisions" of the district courts. *See Backe v. LeBlanc*, 691 F.3d 645, 647 (5th Cir. 2012); *see also* 28 U.S.C. § 1291. Additionally, we have jurisdiction to review "interlocutory orders that '[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] [are] effectively unreviewable on appeal from a final judgment.'" *Backe*, 691 F.3d at 648 (quoting *Texas v. Caremark, Inc.*, 584 F.3d 655, 657–58 (5th Cir. 2009)). This "collateral order doctrine" allows us to review orders meeting those criteria even before final judgment. *In re Deepwater Horizon*, 793 F.3d 479, 483 (5th Cir. 2015). Appeals from the denial of immunity—so long as the decision does not rest on disputed material facts— fall into this category. *See Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) ("[T]he denial of a substantial claim of absolute immunity is an order appealable before final judgment, for the essence of absolute immunity is its possessor's entitlement not to have to answer for his conduct in a civil damages action."); *see also Cantu v. Rocha*, 77 F.3d 795, 804 (5th Cir. 1996) ("[O]rders premised on the denial of [official] immunity under Texas state law are appealable in federal court to the same extent as district court orders premised on the denial of federal law immunity.").

The district court denied all Defendants' motions to dismiss on the grounds of prosecutorial immunity, and it denied White and Abbott's motions to dismiss on the ground of official immunity. No one suggests the district court's denial was premised on a dispute of fact—at this stage, the court was required to accept all factual allegations in Wooten's complaint as true. *See Cannizzaro*, 956 F.3d at 779. We therefore hold that the district court's denial of prosecutorial immunity for all Defendants, and its denial of official

immunity for White and Abbott,[8] is an appealable collateral order that we have jurisdiction to consider.

But we lack jurisdiction to consider any Defendant's claim of qualified immunity, as well as Roach and Milner's claim of official immunity. Defendants assert we have jurisdiction over the qualified immunity claims because (1) the district court failed or refused to rule on the issue, thereby triggering an immediate right to appeal, or (2) alternatively under our pendent appellate jurisdiction. Wooten counters by arguing that the district court order under review did not address qualified immunity, so there is nothing to appeal. We agree with Wooten and conclude we have no jurisdiction to consider qualified immunity in this appeal. We reach a similar conclusion regarding Roach and Milner's assertion of official immunity.

The district court decision on those issues is not an appealable "collateral order." When the court ruled on Defendants' motions to dismiss, it noted Wooten's request for leave to amend her complaint and concluded that "allowing the Plaintiff to replead [would] assist the Court in deciding [the] qualified immunity" issue. It then denied all Defendants' claims to qualified immunity "as moot at this time." It also denied Roach and Milner's claim to official immunity "as moot." The court explained, "[a]fter the Plaintiff files her amended complaint, the . . . Defendants may reurge their motion with respect to . . . the defense of qualified immunity." It then directed Wooten to file an amended complaint "within fourteen days of this order."

None of those statements from the district court amounted to an appealable collateral order. First, none "conclusively determine[d] the disputed

---

[8] Although we have jurisdiction to consider White and Abbott's official immunity claims, we ultimately decide that we need not reach the issue because of our determination that White and Abbott are entitled to absolute prosecutorial immunity. *See infra* IV(C).

question" of whether Defendants are entitled to qualified immunity or whether Milner and Roach are entitled to official immunity. *See Backe*, 691 F.3d at 648. Second, none "resolve[d] an important issue completely separate from the merits of the action." *See id.* To the contrary, the court made clear that it would resolve those issues only *after* Wooten amended her complaint. True, the district court did not explicitly tell Roach and Milner to raise official immunity in a later motion, but the court denied their motion on the issue "as moot." This suggests that, as with qualified immunity, the district court believed the better course was to revisit the issue after Wooten amended her complaint.

None of the cases cited by Defendants compels a contrary conclusion. Defendants first point to our decision in *Helton v. Clements*, 787 F.2d 1016 (5th Cir. 1986) (per curiam), and ask us to extend it to this context. In *Helton*, we held that a district court's explicit refusal to rule on the issue of qualified immunity until trial was immediately appealable, broadly holding "that an order which declines or refuses to rule on [a] motion to dismiss on the basis of a claim of immunity 'is an appealable "final decision" within the meaning of 28 U.S.C. § 1291 notwithstanding the absence of a final judgment.'" *Id.* at 1017 (quoting *Mitchell*, 472 U.S. at 530).

Defendants also rely on *Backe v. LeBlanc*. In *Backe*, the district court refused to rule on the defendants' assertion of qualified immunity on a motion to dismiss, instead concluding that it would wait to rule "pending general discovery." 691 F.3d at 647. We held this refusal to rule was appealable, noting that the district court failed to follow the "careful procedure under which a district court may defer its qualified immunity ruling if further factual development is necessary to ascertain the availability of that defense." *Id.* at 648. That procedure requires district courts first to conclude that the allegations would overcome qualified immunity, and only then to allow "narrowly tailored" discovery aimed at facts required to decide qualified

immunity. *Id.* (quoting *Lion Boulos v. Wilson*, 834 F.2d 504, 507–08 (5th Cir. 1987)).

Neither *Helton* nor *Backe* supports Defendants' argument that we have jurisdiction to reach qualified immunity or Roach and Milner's official immunity. First, as already explained, the district court *did not rule* on those issues, instead ordering Wooten to amend her complaint so the court could better analyze them. Second, unlike in *Helton* and *Backe*, the district court did not expressly refuse to address the issues or postpone its decision until after extensive discovery. Rather, the court noted that amended allegations would help it decide. And it set an explicit timeline for the amendment—"within fourteen days." This case is thus materially different than the district court decisions at issue in *Helton* (refusal to rule until trial) and *Backe* (refusal to rule until after general discovery). As of the date of Defendants' notices of appeal—the "event of jurisdictional significance," *see Griggs*, 459 U.S. at 58—the court had not ruled on either qualified immunity or Roach and Milner's official immunity.

This case is more like *Meza v. Livingston*, 537 F.3d 364 (5th Cir. 2008). There, the defendants filed motions to dismiss and for summary judgment based on Eleventh Amendment immunity. *Id.* at 365. The district court denied the motions to dismiss as duplicative of the summary judgment motion, which it referred to a magistrate judge. *Id.* At a subsequent hearing, the district court stated the summary judgment motion was still under advisement. *Id.* When the defendants appealed, we declined to extend *Helton*'s "narrow holding" to a situation where the district court did not refuse to rule on an immunity issue that, to the contrary, remained "under advisement." *Id.* at 367. Here, as in *Meza*, the district court has not "refused to rule" on qualified immunity or on Roach and Milner's official immunity; rulings on those issues instead await the

amended complaint. As in *Meza*, we are unconvinced that *Helton* allows us to consider any of those as-yet-undecided issues now.

In sum, we hold there is no appealable collateral order with respect to any Defendant's qualified immunity or with respect to Roach and Milner's official immunity. We therefore lack jurisdiction to consider those issues.

## IV.

We now consider whether Defendants are entitled to prosecutorial immunity. We conclude Roach, White, and Abbott are, but Milner is not.

## A.

Prosecutors may be shielded by absolute immunity for acting as the state's advocate in criminal cases. *See generally Imbler v. Pachtman*, 424 U.S. 409 (1976). But immunity is not automatic. *See Cousin v. Small*, 325 F.3d 627, 631 (5th Cir. 2003) (per curiam). Rather, prosecutors are absolutely immune only "for their conduct in 'initiating a prosecution and in presenting the State's case' insofar as that conduct is 'intimately associated with the judicial phase of the criminal process.'" *Burns v. Reed*, 500 U.S. 478, 486 (1991) (citations omitted) (quoting *Imbler*, 424 U.S. at 430–31). Conversely, "a prosecutor is afforded only qualified immunity for acts performed in the course of 'administrative duties and those investigatory functions that do not relate to an advocate's preparation for the initiation of a prosecution or for judicial proceedings.'" *Loupe v. O'Bannon*, 824 F.3d 534, 539 (5th Cir. 2016) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993)). In sum, prosecutors are not entitled to absolute immunity when "functioning as the equivalent of a detective rather than as an advocate preparing for trial." *Cousin*, 325 F.3d at 632–33.

Applying these standards, we first examine the allegations regarding Roach and Milner before turning to those regarding White and Abbott.

**B.**

The district court denied Roach and Milner prosecutorial immunity, reasoning they "were acting as investigators searching for probable cause, as opposed to acting as prosecutors with probable cause preparing for prosecution." Relying on *Buckley*, the court emphasized that CCDAO investigated Wooten "without the help of law enforcement." *See Buckley*, 509 U.S. at 273 (denying absolute immunity "[w]hen a prosecutor performs the investigative functions normally performed by a detective or police officer"). The court further observed that, although the Wooten investigation began in the fall of 2008, by the fall of 2009, Milner admitted he did not have enough to indict Wooten but "would continue to gather information through their investigation."

We agree with the district court that, according to allegations we must accept as true, Milner was performing investigative functions that do not qualify for absolute immunity. As we explain below, however, we reach a different result as to the supervisory claim against Roach.

Wooten alleges facts showing that Milner functioned as an investigator rather than a prosecutor. Wooten alleges that Milner led the Special Crimes Division, which investigated her. She avers that "Milner requested the assistance of the . . . Office of the Attorney General of Texas in investigating a case against Judge Wooten." "CCDAO decided to conduct its own investigation," and "[l]aw enforcement did not initiate th[e] investigation." The grand jury began to issue investigatory subpoenas in September 2008. In September 2009, Milner began issuing grand jury subpoenas for Wooten's employees, campaign contributors, and campaign personnel. And that practice continued for an extended period—Wooten alleges that at least four of the six grand juries convened subpoenaed "bank records, phone records, credit card documents, personal records, emails, and various campaign-related vendor

information." After a year of these proceedings, Milner admitted he needed more time to investigate before he could secure an indictment against Wooten despite the investigation already conducted—*i.e.*, he did not yet have probable cause. The investigation continued for years. Further, CCDAO's investigatory (*i.e.*, non-prosecutorial) role continued even after White's appointment as attorney *pro tem*. The document appointing White included a provision stating CCDAO would "render . . . *non-prosecutorial support, investigative aid*[,] and other assistance" (emphasis added).

Binding precedent from the Supreme Court and our circuit illustrates why these allegations show Milner was performing an investigative function. In *Buckley*, the Supreme Court denied absolute immunity to prosecutors accused of conspiring to manufacture evidence and making false statements to the press. 509 U.S. at 274–75. Regarding the alleged evidence fabrication, the Court reasoned that because it took place before the prosecutors had probable cause to arrest the plaintiff, their work was "entirely investigative in character"—"[a] prosecutor neither is, nor should consider himself to be, an advocate before he has probable cause to have anyone arrested." *Id.* at 274. Regarding the press statements, the Court reasoned that "[t]he conduct of a press conference does not involve the initiation of prosecution, the presentation of the state's case in court, or actions preparatory for these functions." *Id.* at 278. Thus, the prosecutors were ineligible for absolute immunity.

Similarly, in *Hoog-Watson v. Guadalupe County*, 591 F.3d 431 (5th Cir. 2009), we denied absolute immunity to a prosecutor who participated in searching for and seizing evidence. The prosecutor was on the scene to evaluate whether a warrantless search was justified. *Id.* at 433. We concluded the conduct at issue was investigative because the prosecutor did not evaluate evidence gathered by police, but rather "evaluated [the scene] *as part of* the effort to assemble the evidence." *Id.* at 438–39.

Like the defendants in *Buckley* and *Hoog-Watson*, Milner's alleged actions were investigatory. Wooten alleges CCDAO took the place of law enforcement by initiating and conducting the entire investigation. Wooten also alleges Milner admitted to another judge in the fall of 2009 that his investigation had not yet uncovered probable cause to indict Wooten, which *Buckley* suggests is a probative fact in the analysis. *See Buckley*, 509 U.S. at 275 (suggesting absolute immunity inapplicable "when [prosecutors are] conducting investigative work themselves in order to decide whether a suspect may be arrested"). And we have previously observed that "after probable cause has been established, it is more likely that the prosecutor acts as an advocate." *Cousin*, 325 F.3d at 633. Milner issued various grand jury subpoenas for people connected with Wooten. The allegations paint a picture in which Milner, acting as a stand-in for law enforcement, used the juries to investigate "*as part of* the effort to assemble the evidence" that would be needed to indict Wooten. *See Hoog-Watson*, 591 F.3d at 439. Milner allegedly admitted as much by informing another judge that he "would eventually gather enough information to indict Judge Wooten." These alleged acts were "entirely investigative in character." *Buckley*, 509 U.S. at 274. In short, Milner fulfilled the fact-finding role generally filled by law enforcement, and thus he is entitled to claim only the level of immunity available to law enforcement—qualified immunity. *Id.* at 273 ("When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, [absolute] immunity should protect the one and not the other." (cleaned up)).

Disagreeing, Milner contends his conduct is immunized merely because he was involved in grand jury proceedings. Our case law does not support this assertion. For example, we have explained that "alleged misconduct . . . before a grand jury does not automatically supply the intimate connection with the

judicial process upon which *Imbler* immunity depends." *Morrison v. City of Baton Rouge*, 761 F.2d 242, 247 (5th Cir. 1985) (per curiam). Rather, as in all cases assessing prosecutorial immunity, we perform "a functional analysis of a prosecutor's activities." *Id.* We have distinguished presenting evidence to a grand jury—either to obtain an indictment or a no bill—from situations where the prosecutor and grand jury "play[] a broader investigative role than the typical grand jury asked simply to true bill or no bill a specific suspect." *Id.*

As noted, Wooten alleged Milner used the grand juries as investigatory tools—for example, to subpoena documents and individuals. Milner admitted, after over a year of investigating, that he needed more time to gather enough evidence to indict Wooten—*i.e.*, he admitted to not yet having probable cause. And when one of the juries asked Milner to present his criminal case against Wooten, he declined to do so for fear of being unable to establish probable cause. Wooten's allegations about Milner's conduct with the grand juries pertain to the "broader investigative role" of the grand jury we spoke of in *Morrison. See id.*

Milner believes we should view his alleged actions as part of the process of initiating a judicial proceeding, and that we should "apply[] prosecutorial immunity sooner in the criminal process rather than later." He also asserts that, once a suspect has been identified as the subject of an investigation, the actions by prosecutors to investigate him are "inherently 'prosecutorial' determinations." We disagree with both contentions. The question, rather, is the nature of the *function* alleged. Prosecutors "may not shield [their] investigative work with the aegis of absolute immunity merely because," in hindsight, "that work may be . . . described as 'preparation' for a possible trial." *Buckley*, 509 U.S. at 276. For these reasons, we conclude Milner is not shielded by absolute prosecutorial immunity.

We reach a different conclusion regarding Roach, the District Attorney. Wooten fails to plausibly allege that Roach supervised or failed to intervene in Milner's non-prosecutorial actions in the Wooten investigation. Although Wooten generally alleges that Roach ran the CCDAO during the time in question and employed Milner, and that Roach was aware of Assistant District Attorney Davis's investigation of Judge Wooten and another judge,[9] Wooten does not specifically allege that Roach was involved in supervising Milner's investigation.[10] Rather, Wooten alleges in conclusory fashion that Roach conspired with the other defendants "to wrongfully arrest and prosecute [Wooten] for false and legally untenable claims" and to "deprive [Wooten] of her constitutional rights," and that Roach was the "policy maker in relation to the wrongful arrests and prosecutions." Wooten further alleges that Roach requested White's appointment as attorney *pro tem*.

Under Supreme Court precedent, those allegations fail to show Roach was performing an investigative rather than prosecutorial function in supervising the office. The key decision is *Van de Kamp v. Goldstein*, 555 U.S. 335 (2009). After a successful habeas application, the plaintiff in that case sued a former district attorney and his chief deputy. *Id.* at 339–40. He alleged they failed to train and supervise the office's prosecutors concerning disclosure of impeachment material. *Id.* The district court and the Ninth Circuit characterized such supervision and training as administrative, rather than

---

[9] Davis investigated Judge Greg Willis during the general timeframe that Milner investigated Wooten. But Davis's investigation of Willis is not part of this case.

[10] Wooten alleges that a grand jury member, D.J., told the FBI that Assistant District Attorney Paul Anfosso usually presented cases to the grand jury, but that there were two notable exceptions: the cases against Judges Wooten and Willis were presented by Milner and Davis, respectively. Wooten alleges D.J. "articulated [these cases] as being the District Attorney's . . . top two cases." While these allegations may show that Judge Wooten's case was important to Roach, they do not show that Roach was involved in supervising the investigation of Judge Wooten.

prosecutorial, rendering the defendants ineligible for prosecutorial immunity. *Id.* The Supreme Court reversed. *Id.* Applying *Imbler*'s functional test, the Court concluded that, although the plaintiff was "attack[ing] the office's administrative procedures," the defendants were still entitled to prosecutorial immunity because the plaintiff's "claims focus[ed] upon a certain kind of administrative obligation—a kind that itself is directly connected with the conduct of a trial." *Id.* at 344. The Court also reasoned that "a suit charging that a supervisor made a mistake directly related to a particular trial, . . . and a suit charging that a supervisor trained and supervised inadequately, . . . would seem very much alike." *Id.* at 346.

Applying *Van de Kamp* yields the conclusion that Roach is entitled to prosecutorial immunity. Wooten attacks Roach's supervision of, and failure to intervene in, the Wooten investigation. But she does not allege Roach was personally involved in the investigation. Rather, her allegations about Roach are more general: he supervised the office, he employed Milner, he was generally aware of the investigations against Wooten and another judge, he was the "policy maker in relation to . . . wrongful arrests and prosecutions," he conspired "to wrongfully arrest and prosecute [Wooten]," and he "act[ed] pursuant to a custom, policy, practice and/or procedure of the CCDAO" to undertake "political prosecutions" and violate the Fourth and Fourteenth Amendments. These allegations are either (1) connected to the administrative functioning of the office, *see Van de Kamp*, 555 U.S. at 344 (contrasting administrative obligations "directly connected with the conduct of a trial" with those "concerning, for example, workplace hiring, payroll administration," and others unconnected with judicial process); or (2) connected to the judicial process: arrests and prosecutions, *see Imbler*, 424 U.S. at 431 (prosecutors absolutely immune when "initiating a prosecution and in presenting the

State's case"). For those reasons, we hold that Roach is entitled to prosecutorial immunity based on the allegations in the operative complaint.

## C.

We now consider whether White and Abbott are entitled to prosecutorial immunity. The district court denied White absolute immunity for his involvement in the Wooten case from December 2008 through July 22, 2010. The court reasoned there were "no allegations . . . anything occurred that was tangentially related to the judicial phase of [Wooten's] prosecution" until July 22, 2010, when CCDAO requested that White become attorney *pro tem* for the Wooten matter. And because Abbott was sued for supervisory liability, the district court denied him immunity to the extent White was denied immunity.

We disagree with the district court's conclusion that White is ineligible for prosecutorial immunity. None of the non-conclusory allegations in Wooten's complaint—even taken as true—show that White engaged in non-prosecutorial activity. Wooten fails to specifically allege how White was involved in the investigatory phase of the grand jury proceedings. As already discussed, Wooten extensively alleges Milner's involvement with the grand juries. In contrast, her allegations regarding White's involvement with the grand juries are limited. Although Wooten generally alleges that White's "involve[ment] in the investigation" began in December 2008, Wooten does not allege White appeared before any of the four grand juries convened between that time and the date White was appointed attorney *pro tem*. The only allegation regarding White's appearance before any grand jury is that following Wooten's refusal to resign, never run for office again, and plead guilty, White appeared before the sixth grand jury and obtained a "re-indictment" of Wooten. But appearing before a grand jury to present evidence and obtain an indictment is the function of an advocate for the state to which prosecutorial immunity attaches. *See Buckley*, 509 U.S. at 273; *see also Morrison*, 761 F.2d at 247.

Wooten also alleges White mishandled the FBI investigation report. Specifically, she alleges "White intentionally withheld approximately 35 additional pages from the FBI Report that" were exculpatory. But failure to disclose exculpatory evidence is shielded by absolute immunity. *Cousin*, 325 F.3d at 635. Likewise, White is entitled to immunity for the attempted plea bargain outlined in the complaint. "We consider plea bargaining activities to be intimately associated with the judicial phase of the criminal process . . . ." *Humble v. Foreman*, 563 F.2d 780, 781 (5th Cir. 1977) (cleaned up), *overruled on other grounds*, *Sparks v. Duval Cty. Ranch Co.*, 604 F.2d 976 (5th Cir. 1979) (en banc). When he "relayed an offer" that if Wooten took certain actions, the indictment would be dismissed, White was acting as the state's advocate and is thus entitled to absolute immunity. White is also immune for appearing at a hearing to oppose Wooten's motion to quash the re-assembled grand jury because his actions "involve[d] the prosecutor's 'role as advocate for the State,' rather than his role as 'administrator or investigative officer.'" *See Burns*, 500 U.S. at 491 (quoting *Imbler*, 424 U.S. at 430–31 & n.33).

Finally, Wooten's conclusory allegations about White's involvement in the overall investigation fail to strip him of prosecutorial immunity. Wooten repeatedly claims, in her brief and complaint, that White was involved in investigating her. But other than the allegations discussed above, she fails to allege how White participated in the investigation. Absent a non-conclusory allegation of how White participated in ways that were investigatory, White is entitled to immunity. *See Buckley*, 509 U.S. at 274.

Likewise, the district court erred in denying prosecutorial immunity to Abbott. The complaint contains only a few allegations regarding Abbott. Wooten alleges that Abbott oversaw the Attorney General's office during the time in question, and that he allowed his staff to become involved in the Wooten investigation. Wooten also alleges Abbott "knowingly permitted"

No. 19-40315

White's conduct and he failed to intervene in the ongoing investigation. None of these allegations overcomes Abbott's assertion of absolute prosecutorial immunity. At best, they claim Abbott failed to intervene in acts by White that we have already concluded were not investigative, and for which White is entitled to prosecutorial immunity.

For these reasons, we conclude White and Abbott are entitled to absolute prosecutorial immunity for their alleged involvement in the Wooten investigation. The district court's contrary ruling must therefore be reversed.[11]

\* \* \*

We sum up our decision as follows:

- The district court lacked jurisdiction to accept Wooten's second amended complaint because the Defendants' notices of appeal divested it of jurisdiction. This appeal is therefore not moot.

- We lack jurisdiction to consider any Defendant's entitlement to qualified immunity because the district court did not rule on that issue. For the same reason, we lack jurisdiction to consider Roach and Milner's entitlement to official immunity.

- We have jurisdiction to review Defendants' claims to prosecutorial immunity, and Abbott and White's claims to official immunity.

- On the merits, Roach, White, and Abbott are each entitled to absolute prosecutorial immunity. Milner, however, is not.

The district court's judgment is AFFIRMED IN PART and REVERSED IN PART. The case is REMANDED to the district court with instructions to RENDER judgment in favor of Defendants White, Abbott, and Roach. The

---

[11] Defendants also asserted official immunity in response to Wooten's state-law claim for abuse of process. The district court, although noting that "conclusively establishing official immunity at this stage in the litigation [would] be difficult based on the allegations of this case," nevertheless denied Abbott and White that immunity. We need not, and do not, reach this issue because Abbott and White are both entitled to absolute immunity. Further, as previously discussed, we lack jurisdiction to review Milner and Roach's claim to official immunity because the district court made no ruling on the issue.

district court may proceed with the case consistent with this opinion, including accepting, if appropriate, an amended complaint from Wooten.